IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1875.

## Quinn *versus* Davis.

1. Davis deposited a piano for storage with Kirby, who bought and sold second-hand furniture at auction and received goods on storage. Kirby had the piano sold at an auction store; Quinn bought it bonâ fide at a fair sale, without knowing who was its owner. *Held,* that Davis could recover the piano from Quinn.

2. The owner of a chattel cannot, apart from legal process, be divested of his title to it except through some unlawful or improvident act of his own; the transfer of possession to another without more is not such act.

3. The transfer must be accompanied by something indicating in the custodian a right of property or power of alienation; there must be proof of language or conduct at least equivocal.

4. McMahon *v.* Sloan, 2 Jones 229, followed.

January 5th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia :* No. 6, to January Term 1873.

This was an action of replevin for a piano, brought 9th August 1870, by Robert S. Davis against John Quinn. The defendant gave a claim-property bond and retained the property.

The case was tried October 30th 1871, before Hare, P. J.

· The plaintiff testified that in the spring of 1870, he wished to store some furniture; he applied to William R. Kirby, who had a store on Eighth street, to take his furniture on storage; plaintiff stored with him, amongst other things, a piano made by Gould and paid him $50 in advance for storage for nine months.

(15)

[Quinn *v.* Davis.]

On cross-examination plaintiff said, Kirby was a dealer in second-hand furniture; plaintiff had known him six years; when he first knew him he had kept a second-hand furniture store at Tenth and Hunter streets, and moved to Market street near Tenth street and carried on the same business there; he also took goods on storage; he then moved to the Eighth street store; he bought and sold goods at auction.

E. Hart, the cashier of Thomas & Son, auctioneers, testified that Kirby had left a number of pianos with them to be sold; one made by Gould, which was left in July 1870 to be sold by auction and was sold to defendant on the 7th of July.

On cross-examination, witness said, Kirby's business was buying and selling goods at auction and he was engaged in no other business so far as witness knew; he was in the habit in sending goods to that store to be sold at auction, sometimes in his own name and sometimes in the name of others; the piano in question was received in the usual way. Quinn had no knowledge who the owner was; he was an innocent purchaser without knowledge of any kind.

The plaintiff gave evidence that the piano bought by Quinn at the auction sale was the same left by him with Kirby.

The defendant testified that he bought the piano for a fair price at public auction, without knowing who the owner was, that he had no knowledge of the dealings between Kirby and the plaintiff, and had never known of Kirby having been éngaged in any other business than attending auctions and buying and selling furniture. There was other similar evidence.

The defendant's points were :—

1. If a man makes a contract with a second-hand furniture dealer to take his goods on storage, and the furniture dealer sells the goods stored, either at his store or by sending them to public auction to be sold, the bonâ fide purchaser is protected in his purchase.

2. If the plaintiff deposited the piano with Kirby, who was a dealer in second-hand furniture, on storage, and the dealer sold it through the auctioneer in the ordinary course of his business, and Quinn, the defendant, purchased the same in good faith and for a valuable consideration, the verdict must be for the defendant.

The court charged :—

" If the piano was placed with Kirby solely for storage, he had no right to sell it, and the purchaser acquired no title against the rightful owner. In order to protect an innocent purchaser who buys from a bailee, the owner of the thing sold must have conferred some evidence of ownership on the bailee, other than a mere possession; otherwise no one would be safe in letting a horse, or in leaving his watch at a jeweller's to be repaired.

" No such proof has been offered in this case. Davis put the

[Quinn v. Davis.]

piano into the hands of Kirby for safe-keeping, but he did no more; and therefore Kirby had no color of right to sell, and his act conferred no title on the purchaser. If you believe the plaintiff's testimony your verdict should be for the value of the piano. I decline to affirm the points presented by the counsel for the defendant."

The verdict was for the plaintiff for $350.

The defendant removed the record to the Supreme Court by writ of error, and assigned for error, the charge of the court and the refusal of his points.

*A. M. Burton* and *E. C. Quinn*, for plaintiff in error.—A bonâ fide purchaser of property, which has been placed by the owner in the custody of a party whose common business it is to sell, is protected in his purchase: Pickering v. Busk, 15 East 38. Where the owner, by his own indiscretion, clothes a bailee with an apparent authority to sell, or does any other act tending to mislead the public as to the ownership of his property, he cannot recover from an innocent purchaser: Shaw v. Levy, 17 S. & R. 101; Rapp v. Palmer, 3 Watts 178; McMahon v. Sloan, 2 Jones 233; Lecky v. McDermott, 8 S. & R. 500; Rapp v. Palmer, 3 Watts 178.

*J. C. Redheffer*, for defendant in error.—Where a vendor holds goods in a fiduciary capacity, with no express or implied right from the owner to sell them, he can reclaim them from even a bonâ fide purchaser: Story on Sales 205, pl. 201; McMahon v. Sloan, 2 Jones 229.

Mr. Justice WOODWARD delivered the opinion of the court, February 1st 1875.

Robert S. Davis, the plaintiff below, deposited his household furniture for storage with William R. Kirby, in the spring of 1870. Kirby was a dealer in second-hand furniture. Included in the articles stored was the piano which is the subject of this suit. Soon after the goods were placed in his hands, Kirby received from the plaintiff fifty dollars for nine months' storage in advance. The piano was subsequently removed to the auction store of M. Thomas & Son, who sold it on the 7th of July 1870, under the direction of Kirby, to John Quinn, the defendant below. This action was commenced on the 9th of August 1870, and at the trial, under the instructions of the District Court, a verdict was rendered for the plaintiff. It is now alleged that these instructions were erroneous, and that the judgment entered on the verdict should be reversed, on the general ground that an honest purchaser of property which has been placed by the owner in the custody of a person whose common business is to sell similar property, ought to be protected in his purchase.

28 P. F. SMITH—2

[Quinn *v.* Davis.]

In this state, the owner of a chattel cannot, apart from legal process, be divested of his title to it except as a consequence of some unlawful or improvident act of his own. The transfer of possession to another, without more, is not such an act. It must be accompanied by something to indicate the existence in the custodian of some right of property or some power of alienation. There must be proof of language or conduct that is at least equivocal. The general rule stated in Saltus *v.* Everett, 20 Wend. 366, that " the title of property in things movable can pass from the owner only by his own consent and voluntary act, or by operation of law," was recognised in McMahon *v.* Sloan, 2 Jones 229, and has been uniformly accepted and applied in the practice of this court.

The arrangement between the plaintiff and Kirby created an ordinary contract of bailment. It came within none of the exceptions that have been made to the general rule that has been stated. No sale at any time or on any terms was in the view of either party ; no evidence of the right of disposition according to any custom of trade or any common understanding of the business community, accompanied the transfer of possession ; and no evidence in the record shows that the plaintiff had conferred on Kirby either direct or implied authority to sell his goods. The fact that the piano passed into the hands of the auctioneers, who sold it on behalf of Kirby in accordance with their usual dealings with him, is urged as a reason for the protection of the defendant. It is not apparent how the plaintiff can be legitimately connected with the auctioneers. The deposit of the piano with them was the act of Kirby alone. The sale was made under his directions, and they were given in flagrant violation of the duty he owed under his contract to the plaintiff. It was said by Chief Justice Gibson, in a case where an agreement to sell on stipulated terms was superadded to a lease of personal property, that " no facility for fraudulent dealing was afforded by it that would not be afforded by the naked contract of bailment." This is a mere bailment, with no ulterior or subsidiary contract expressed or contemplated by the parties.

The objection is strongly urged that the placing of this property in the hands of a dealer in second-hand furniture, whose employment it was to buy and sell, was an act so improvident on the part of the plaintiff as to throw upon him the consequences of Kirby's misconduct. The adoption of such a principle, if carried out and acted on in the current business of the community, would produce startling results. In many obvious directions, it would revolutionize the law of bailments in Pennsylvania. There is scarcely room in this record, however, to raise this question. Every witness whose attention was called to the subject, and whose testimony is embraced in the bill of exceptions, stated that the business of Kirby

[Quinn v. Davis.]

was the buying and selling · of second-hand furniture, not at his store, but at auction. It is true that the plaintiff testified that he bought and sold goods at the store he occupied in Market street near Tenth; but in the same connection he said "he also took goods on storage there." And in the concluding sentence of his testimony, the plaintiff said that Kirby "bought and sold goods at auction"—that he "so understood from his conversation." It is apparent from the whole evidence that Kirby's place of business was a place for the storage rather than for the purchase and sale of goods. There was nothing in the conduct of the plaintiff that was unlawful, negligent or imprudent, and the instructions to the jury by the court below were right.　　　　Judgment affirmed.