# Werley, Appellant, *v.* Dunn.

*Contract—Sale—Fraud—Title—Check.*

1. Where on a sale of goods the price is to be paid partly by notes and partly in cash, and the seller delivers the goods, accepts a note and a check, and the check is not paid because there are no funds in bank, title to the goods does not pass, and the seller may pursue them in the hands of an innocent purchaser for value. If in such a case the seller agrees to permit the purchaser to retain the goods upon the execution by the latter of a chattel lease, the purchaser cannot thereafter make a good title to the goods even to an innocent purchaser for value.

*Bailment—Lease—Installment lease.*

2. A contract is to be construed as a bailment, which is in terms a

lease of goods, which fixes the period during which the agreement is to be enforced, provides for monthly payments of rent, for safe keeping and return of the property to the lessor at his place of business at the end of the term, and that on the payment of a stipulated sum at the end of the term the lessee may purchase the goods.

Argued Dec. 3, 1913. Appeal, No. 202, Oct. T., 1913, by plaintiff, from order of C. P. Schuylkill Co., July Term, 1913, No. 171, refusing to take off nonsuit in case of K. D. Werley v. Weston Dunn. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Reversed.

Replevin for two mules. Before BRUMM, J.

From the record it appeared that plaintiff early in November, 1911, sold the two mules in question and two brown horses to M. A. Rarick for $430. Two hundred and thirty was to be paid in notes, and $200 in cash. Plaintiff accepted from Rarick two checks one for $150 and one for $50.00, but these were not paid because of no funds in bank. Plaintiff insisted upon a return of the animals, but finally agreed to permit Rarick to retain possession of them if he would execute a lease for them. Rarick accordingly executed the following paper:

"This agreement made this 10th day of Nov. A. D. 1911, between Kirby D. Werley, of Hamburg, Berks County, Pennsylvania, party of the first part, and M. A. Rarick, party of the second part, Witnesseth, that the party of the first part hereby leases and hires unto the said party of the second part the following article or articles to wit: 2 mules, (Seal Brown) two horses the description of which is as follows: 2 brown horses, 1 five years and 1 fourteen years old, 2 brown mules, 1½ years old, unbroke, for the term of 9 months from the date hereof, reserving for the hire or use thereof for the said term the sum of $430 payable as follows:

Dollars at the execution of this agreement, and the residue in monthly payments of        Dollars, said payments to be made on the        day of each and

every month during the term of this lease, at the business place of the said party of the first part, to wit, Hamburg, Berks County, Pennsylvania; said deferred payments to be evidenced by a promissory note or notes given by the said party of the second part to the said party of the first part; and the said Lessee agrees as follows with the said party of the first part to wit, that he will pay the unpaid hire as aforesaid, the several days as it becomes due; that he will take good care of the said mules and horses, and will not, without the written consent of the party of the first part, sell or hire the same or part with the possession thereof; that he will, at any time when required, exhibit the said mules and horses to the party of the first part or his agent, and in case default be made in any of the payments as above agreed upon, or in case of the breach of any of the covenants aforesaid, or in case a petition in bankruptcy be filed by or against the said party of the second part, the said party of the second part agrees to forthwith deliver said property to the said party of the first part, or will permit the said party of the first part or his agent or agents to enter into or upon any premises where said property may be, and without let or hindrance take away the same, using such force as may be necessary in the removal thereof, hereby releasing all errors on writ of action which said party of the second part may have for such forcible taking, and the party of the second part further agrees to return said mules and horses to the said party of the first part, at his place of business in Hamburg, Berks County, Pennsylvania, at the end of the term of this Lease.

"It is further agreed that all money paid or payable to the said party of the first part prior to said repossession shall be retained or recoverable by the said party of the first part as rent or hire for the use of said mules and horses without abatement or reduction.

"The said party of the first part hereby agrees that if at the expiration of the term of this lease, the said

lessee, his legal representatives or assigns, shall wish to purchase said mules and horses the said Kirby D. Werley will make and deliver to said Lessee, or such representative or assigns, a Bill of Sale thereof upon payment of such sum as will, with previous payments of hire amount to the sum of $430, but it is expressly understood and agreed by and between the said parties to this agreement, that no title to the said mules & horses, either legal or equitable, shall vest in the said party of the second part, except as Lessee under this agreement, until the terms of purchase as above provided, have been complied with, and before said Bill of Sale has been duly delivered by the said party of the first part."

About eight days after the execution of the above paper Rarick sold the mules to Weston Dunn, the defendant.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*W. F. Shepherd,* for appellant.—The fundamental distinction between a bailment and a sale lies in the fact that in the former the subject of the contract, although in an altered form, is to be restored to the owner, while in the latter there is no obligation to return the specific article or its product: Bretz v. Diehl, 117 Pa. 589; Edwards' App., 105 Pa. 103; Farquhar v. McAlevy, 142 Pa. 233; Jones v. Wands, 1 Pa. Superior Ct. 269; Rieker v. Koechling, 4 Pa. Superior Ct. 286.

The fact that a note was given by the bailee for the deferred payments, does not change the nature of the contract: Lippincott v. Holden, 11 Pa. Superior Ct. 15; Lippincott v. Scott, 198 Pa. 283.

*J. W. Moyer,* for appellee.—The contract was a sale: Stephens v. Gifford, 137 Pa. 219; Bartlick v. Josenhans, 29 Pa. Superior Ct. 227; Forrest v. Nelson, 108 Pa. 481;

Ott v. Sweatman, 166 Pa. 217; Duplex Printing Press Co. v. Publishing Co., 213 Pa. 207; Dearbon v. Raysor, 132 Pa. 231.

OPINION BY HENDERSON, J., February 20, 1914:

No opinion was filed by the learned trial judge when discharging the rule to take off the nonsuit. From the arguments filed we may infer that it was because the property for which the replevin was issued belonged to M. A. Rarick before the execution of the lease on November 10, 1911, and that as possession was not taken by the plaintiff at any time after that date the defendant without notice of the plaintiff's interest in the mules, was an innocent purchaser, and acquired a good title as against the plaintiff. Another position contended for by the defendant is that the paper of November 10, and the testimony in the case, establish a conditional sale. The contention that the defendant is an innocent purchaser assumes that Rarick had title to the property when he obtained it from the plaintiff, but it is shown by the evidence and not disputed that the price to be paid was $430, of which amount $200 was to be a cash payment and the balance to be secured by a note payable in thirty or sixty days. Two checks were given by Rarick to the plaintiff when the contract was made— one of them for $150 and the other for $50.00. Neither of these checks was paid for the reason that Rarick had no funds in the bank. In giving the checks there was an implied representation that they were drawn against funds. They were not money but they took the place of money and were understood by the parties to be a down-payment made at the delivery of possession. A check purports to be drawn against a deposit: Morrison v. Bailey, 5 Ohio State, 13; Hoyt v. Seeley, 18 Conn. 353; Kavanaugh v. Bank, 59 Mo. App. 540; Merchants Bank v. State Bank, 77 U. S. 604; Espey v. Bank, 85 U. S. 604; Champion v. Gordon, 70 Pa. 474. Under the statutes of 30 George 2d, c. 24, it was held that

where one obtained goods by giving in payment a check on a bank in which the party had no account and which he knew would not be paid he was guilty of a false pretense and indictable: Rex v. Jackson, 3 Campbell, 370; 7 C. & P. 825. And the same was held in an indictment under 7 and 8 George 4, c. 29; Rex v. Parker, 2 Moo. C. C. R. 1. It has been held that passing a spurious bank note is a cheat: R. v. Coulson, 1 Eng. Law & Eq. 550; Com. v. Hulbert, 53 Mass. 446. Authorities to the same effect are Rex v. Hazelton, L. R. 2 C. C. 134; Smith v. People, 47 N. Y. 303; Foote v. People, 17 Hun, 218; Com. v. Collins, 8 Philadelphia, 609; Maley v. State, 31 Ind. 192; 2 Whar. Cr. L., sec. 162. The use of the checks by Rarick as disclosed by the testimony was a false allegation by implication at least of their value, and by their delivery to the plaintiff he was enabled to obtain the property which we may assume he could not have got if the plaintiff had known the checks were worthless. If instead of giving the checks and the note he had given a check for the whole of the price and this check was drawn on a bank in which he knew he had no funds it will not be contended that he acquired a good title to the property bought as against the protest of the vendor. His possession would be obtained by the practice of a bald fraud and the plaintiff on discovering that he was cheated might reclaim the property. Granting that the plaintiff intended to part with his property by a sale he could still follow and recover it on the ground that his assent was obtained by fraud. Although a contract in form it was void because of the false pretense and the consequent lack of assent on the part of the plaintiff. In such a case the title does not pass. The effect of the fraud is the destruction of the contract, come in whatever shape it may: Harner v. Fisher, 58 Pa. 453. The fact that part of the consideration was a postponed payment evidenced by the note does not change the nature of the transaction. A deceit as to the $200 would be

as objectionable from a legal standpoint as if the whole amount to be paid had been included in the checks. When the seller discovered that the checks were worthless and that the note could not be collected he took steps to recover his property and did this by means of the paper signed by Rarick on November 10. This paper was executed eight days before the defendant acquired title to the property. The inducement to its execution was that Rarick had got the plaintiff's property from him on such a misrepresentation as to the checks as amounted to a fraud and in the light of the facts Rarick was willing to surrender any claim under his original contract and enter into the lease. When the defendant proposed to buy the mules from Rarick he was not protected by the mere fact that they were in the latter's possession. If Rarick had got possession on the day when the lease was signed it would not be alleged that the defendant could get a good title by going afterward and buying them from Rarick if he held them in fact by lease. Possession of personal property is not conclusive of the title. It is a familiar principle that one cannot make to his vendee a good title to articles he does not own. The rule that where one of two innocent persons must suffer loss that loss should fall on him whose act or omission made the loss possible does not apply to the case of a bailee. In most cases of bailment of chattels the bailee could sell the goods to a purchaser ignorant of the actual ownership, but this would not prevent the owner from asserting his title: Miller Piano Co. v. Parker, 155 Pa. 208. If the defendant wished to avoid the risk that he was dealing with a bailee or a trespasser it was his duty to ascertain the ownership of the property which he was about to buy.

We are not able to agree with the appellee that the contract of November 10 is a conditional sale. It has all the essential features of the lease of a chattel and the case is not distinguishable in principle from Edwards' Appeal, 105 Pa. 103; Bretz v. Diehl, 117 Pa.

589; Farquhar v. McAlevy, 142 Pa. 233; Jones v. Wands, 1 Pa. Superior Ct. 269, and many other cases. The contract is in terms a lease; it fixes the period during which it is to be in force; it provides for monthly payments of rent, for safe keeping and return of the property to the lessor at his place of business at the end of the term. The provision that on the payment of a stipulated sum at the end of the term the lessee may purchase the horses and mules is quite like the usual provision in such instruments. In most instances probably contracts of this character are made with the intention on the part of the lessor and lessee that a sale shall take place, and security is often given for the rent and provision made that the rent shall constitute the purchase money in the event that it is paid according to the contract, but neither the provision for a final sale nor the taking of security for the rent changes the character of the transaction. The written agreement in this case appears on its face to be a bailment, and the evidence does not clearly show that the transaction was a conditional sale. As all the testimony in the case was introduced by the plaintiff our discussion is based upon a state of facts which the evidence might establish. As we view the case the title of Rarick was that of a bailee at the time the defendant bought the mules from him and as such bailee he could not transfer a good title.

The judgment is reversed with a v. f. d. n.