From M. M. Burke, Shenandoah, Pa.

---

## Commonwealth v. One Nash Roadster.

*Liquor law—Enforcement Act of March 27, 1923—Conditional sales—Bailment—Confiscation of automobile—Disposition of proceeds of sale—Criminal law.*

In construing the provisions of paragraph B (iii) of section 11 of the Act of March 27, 1923, P. L. 34, the courts will distinguish between a conditional sale and a bailment lease, and where the contract between the innocent holder of the legal title and the party in possession is one of conditional sale, and not one of bailment lease, as provided in said paragraph, no portion of the proceeds of sale will be awarded to the conditional vendor.

Proceedings to condemn automobile. Q. S. Cumberland Co., Sept. Sess., 1926, No. 36.

*John E. Myers,* for Commonwealth.

*Hyman Goldstein* and *Caleb Brinton,* contra.

BIDDLE, P. J., March 1, 1927.—The pending proceeding is one looking to the condemnation and sale of an automobile, a Nash roadster, model 266, manufacturer's serial number 390836, which was seized by the police of the Borough of Carlisle while it was being used for the illegal transportation of intoxicat-

ing liquor. The automobile in question was sold on July 15, 1926, by the Kruse Motor Company, Incorporated, to one Louis Buttel, by a written contract for a conditional sale of the motor-vehicle. The total purchase price was $1890; $582 of which was paid in cash. For the balance of $1308, Buttel gave his promissory note, payable in twelve equal monthly instalments of $109. The contract provided that the title to the motor-vehicle should remain in the vendor until the indebtedness of the purchaser was fully paid. On the same date the Kruse Motor Company, Incorporated, assigned and transferred its interest in the said conditional sale contract and in the note of Buttel to the Commercial Investment Trust, Incorporated. During the month of August, 1926, one Merle Starnes secured possession of the motor-vehicle from Buttel, the purchaser, and used the car in the illegal transportation of intoxicating liquor for beverage purposes. While so engaged in this county, Starnes was arrested by the police of the Borough of Carlisle and the car was seized at the same time and placed in the custody of the district attorney. On Sept. 29th the Commercial Investment Trust, Incorporated, presented a petition, under the provisions of paragraph (D) (VI) of section 11 of the Act of March 27, 1923, P. L. 34, asking that the car be returned to it as the real owner thereof. A rule to show cause why the prayer of the petition should not be allowed was awarded on that date, and to this petition an answer was filed by the district attorney. On Dec. 19, 1926, the district attorney presented a petition, asking for the forfeiture, condemnation and sale of the motor-vehicle in question, and due advertisement of the rule granted on this petition was made. On Jan. 11, 1927, when the rules on the two petitions were before this court for argument, the Commercial Investment Trust, Incorporated, presented a second petition, asking that it be allowed to participate in the proceeds of sale of the vehicle after its condemnation, in accordance with the provisions of paragraph (B) (III) of section 11 of the Act of March 27, 1923, P. L. 34; and, on the argument of the case, counsel for the Commercial Investment Trust, Incorporated, agreed that the rule on its original petition might be discharged, and that the car should be condemned and sold, but contended that, after the payment of the costs, it should receive the proceeds of the sale to an extent sufficient to pay the amount due on its conditional sale contract with Louis Buttel, the original purchaser. At the same time a stipulation was filed, admitting the conditional sale to Buttel and that the illegal use of the car in question was without the knowledge or consent of the Commercial Investment Trust, Incorporated.

In view of the abandonment by the claimant of its original contention, no discussion of its standing under paragraph (D) (VI) of section 11 of the Enforcement Act is necessary; but, on account of the fact that a very substantial portion of the purchase money had been paid, we should have felt obliged to refuse the prayer of the original petition.

We have not been referred to any determination by the appellate courts of this State as to the right of a conditional vendor to participate, under the provisions of paragraph (B) (III) of section 11 of the Enforcement Act, in the proceeds of the sale of a car that had been forfeited and condemned under the provisions of the Enforcement Act, and we have been unable ourselves to find any such decision. Two cases, at least, similar to this have been passed upon by the lower courts of this State; and in both of them, namely, Com. v. One Columbia Automobile, 5 D. & C. 193, and Com. v. One Ford Truck, 8 D. & C. 491, it was ruled that a conditional vendor, under a contract similar to the one before us for consideration, occupied the same position as that of a bailor under a bailment lease or contract, and that he was, therefore, entitled

to participate in the proceeds of the sale by the sheriff after the payment of the costs. The basis of the decision in each of the two cases mentioned was that the purpose of the legislature in enacting the portion of the Enforcement Act referred to was to save and protect the rights of innocent parties to or in automobiles seized because used in the illegal transportation of intoxicants, and that, as the similarity between the ordinary bailment lease or contract and a conditional sale of the sort under consideration here was very great, the same consideration that the act extended to a technical bailor should extend to the conditional vendor in such cases.

In the first case, Com. v. One Columbia Automobile, 5 D. & C. 193, the court said: "A severance of the title and possession by the agreement or act of the owner, so that the title remains in him, while the possession has been given by him to another, is the fundamental characteristic and criterion of a bailment. . . . This [a conditional sale like the one under consideration] amounts to, and in substance is, a bailment, using the term in its widest and most comprehensive sense, good (under Pennsylvania law) as against everybody but a *bona fide* purchaser or a creditor." In the second case, the Court of Quarter Sessions of Philadelphia said: "The effects of the two contracts are identical. . . . On analysis of the transaction described in the Uniform Act, it is really an executory contract to make a sale upon the happening of a series of conditions, to which is added a bailment until the happening of a certain event."

If the reasoning quoted above is accurate, we should feel bound to reach the same conclusion as that reached in the cases in which that reasoning was followed. But in each of those cases it seems to us that the learned court entirely disregarded an essential element of bailment, which is entirely lacking in the contract before us, and which, as we view it, was lacking in the contracts there considered; and that is that a bailment contemplates as an essential part of the contract itself, and not as a result of a breach of the contract, a return of the article bailed to the bailor at the termination of the bailment. The conditional sale contracts considered by the courts in those two cases contemplated, as does the one before us, a return of the goods to the vendor in case of any breach of the contract itself, but did not contemplate nor provide for a return of the article bailed in the absence of a breach of the conditions to be performed by the conditional vendee. This distinction we regard as one of substance and not of form. We are unable to accept the conclusion announced in one of the cases, that the two contracts were in effect identical. We cannot feel that, if the effects of the two contracts were identical, the appellate courts would have felt it essential to spend so much time and effort in pointing out the very different consequences resulting from their decisions as to whether a contract before them constituted a bailment or a conditional sale.

So, also, to say that "A severance of the title and possession by the agreement or act of the owner, so that the title remains in him, while the possession has been given by him to another, is the fundamental characteristic and criterion of a bailment," is, we think, a sweeping generalization that cannot be accepted without very material qualification. While it is true that the condition so set out appears in all bailments, it also appears in practically all conditional sales and in very many chattel mortgages, so that, if nothing further appeared, it would be impossible to distinguish among the three. What does distinguish the various transactions, as we understand the rulings of the appellate courts, is that a bailment, as such, does not contemplate a transfer of the title as an essential condition of due performance of the terms of the contract (though it may be in contemplation as a subsequent step), and it does contemplate a return of the thing bailed at the end of the bailment. On

Commonwealth v. One Nash Roadster.

the other hand, conditional sales and chattel mortgages *do* contemplate a transfer of title upon due performance of the conditions involved, and do *not* contemplate a return of the chattel involved except upon some breach of the terms of the contract.

"It is of the essence of a contract of bailment that the article bailed be returned, in its own or some altered form, to the bailor, so that he may have his own again:" Farquhar v. McAlevy, 142 Pa. 233, 240; Werley v. Dunn, 56 Pa. Superior Ct. 254.

An agreement that the bailee may become a purchaser during the continuance of the bailment or at its termination by paying the agreed value of the article bailed does not convert the transaction into a sale: Cash Register Co. v. Shurber, 41 Pa. Superior Ct. 187.

It is not essential to the creation of a bailment that the contract should be expressly limited in time, nor that it specifically provide for the return of the goods bailed at the expiration of such time; but it must appear, either expressly or by clear implication, that the return of the article bailed to the bailor was in the contemplation and intention of the parties to the contract, even in the absence of any breach of the conditions of the bailment by the bailee: Jones v. Wands, 1 Pa. Superior Ct. 269; Auto Co. v. De Haven, 53 Pa. Superior Ct. 344; Stiles v. Seaton, 200 Pa. 114, 118.

The line of reasoning adopted by the learned courts which held that the conditional vendee was entitled to the benefit of that portion of the Enforcement Act under consideration here was very nearly identical with that adopted by the lower courts, which ruled that the chattel mortgagee was entitled to the benefits given by this paragraph to the bailor: Com. v. Mathis, 5 D. & C. 191; Com. v. One Cadillac Sedan, 6 D. & C. 118.

But it has been expressly ruled in Com. v. Studebaker Coupé, 86 Pa. Superior Ct. 532, that such a ruling was erroneous; the Superior Court saying: "The provision of the statute above quoted [paragraph *(B)* (III), section 11, of the Act of March 27, 1923, P. L. 34] is a saving clause for the protection of rights which would otherwise be destroyed by a sale under a proceeding *in rem* for a forfeiture of the property. By the explicit provision of the clause, the person to whom it gives relief must be a bailor, who was out of possession at the time of the seizure, because the property had been delivered to the bailee 'under a bailment lease or contract.' . . . To hold that the appellant is entitled to receive payment of its mortgage out of the proceeds of the sale of the vehicle would be judicial legislation and not interpretation of the statute."

It is perfectly true that there is a strong similarity between the ordinary bailment lease of an automobile and a conditional sale of the sort before us in this case, but the similarity between a chattel mortgage and such a conditional sale is even stronger—the courts of some states considering them as identical.

"A chattel mortgage is a conveyance of some present legal or equitable right in personal property, as security for the payment of money or for the performance of some other act. In some jurisdictions a chattel mortgage operates as a sale of the subject-matter on condition subsequent, passing a present legal title subject to be defeated by the performance of the condition; while in other jurisdictions, as a result either of statutory enactment or judicial decision, it is regarded as constituting a security only and as merely creating a lien on the subject-matter:" 11 Corpus Juris, 398.

"A mortgage of chattels is a conditional sale thereof, whereby the legal title is vested in the mortgagee subject to the right of the mortgagor to perform the conditions imposed by the mortgage:" Hurt v. Hubbard, 41 Colo. 505, 92 Pac. Repr. 908.

Commonwealth v. One Nash Roadster.

The courts of North Carolina have defined a chattel mortgage as "a conditional sale of personal property as security for the payment of a debt or the performance of some other obligation:" Odom v. Clark, 146 N. C. 544, 60 S. E. Repr. 513.

So far as protecting the rights of innocent parties is concerned, it is difficult, if not impossible, to discover any logical reason why the rights of a bailor should be protected and those of a chattel mortgagee disregarded, yet, as the Superior Court has announced, the courts are bound by the action of the legislature in this regard; and to extend the protection given by the act to one who does not come within its terms would be judicial legislation and not interpretation of the statute. We feel that the same thing is true as regards the conditional vendor. We do not think that he can be regarded as a bailor who was out of possession at the time of the seizure, because the property had been delivered to the bailee under a bailment lease or contract. If he was not, he was not entitled to the protection of the paragraph of the Enforcement Act under consideration; and the determination must be against him in the present case.

And now, March 1, 1927, the rule granted on the petition of the district attorney on Dec. 19, 1926, is made absolute. The motor-vehicle in question is hereby declared forfeited to the Commonwealth of Pennsylvania and condemned, and the sheriff of this county is directed to sell the same, after giving **due legal notice thereof as required by law, and to pay the proceeds of the sale,** after the payment of the costs, to the treasurer of Cumberland County. The petition of the Commercial Investment Trust, Incorporated, is discharged.

From Francis B. Sellers, Carlisle, Pa.