### Kendall Produce Co. *v.* Terminal Warehouse & Transfer Co. (et al., Appellant).

Argued December 7, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Frederick H. Spotts,* with him *Pepper, Bodine, Stokes & Schoch,* for appellant.—Plaintiff failed to prove its title to the carload of beans which it had replevied.

*Acker, Manning & Brown* and *J. Edgar Wilkinson,* for appellee.—Plaintiff, on learning of the wrongful appropriation, could treat the purchase as applying, and appropriate the payment, to the beans wrongfully appropriated: Yonker v. Vaneer, 91 Pa. Superior Ct. 157.

OPINION BY MR. JUSTICE SCHAFFER, February 11, 1929:
This is an action of replevin for 400 bags of beans claimed by plaintiff as its property and by the intervening defendant, the Atlantic National Bank, to belong to it as the purchaser for value and lawful holder of a valid negotiable order bill of lading issued by the New York Central Railroad Company covering them. The

452

question was submitted to the jury, whose verdict sustained plaintiff's title, and the intervening defendant appeals, asking for judgment non obstante veredicto.

No question arises as to the initial ownership of the beans; they belonged to plaintiff and were part of a larger quantity consisting of 3,244 bags which had been delivered by it to Lewis E. Sands & Co., Inc., to be picked, screened, bagged and stored, the Sands plant being specially equipped to render these services. Afterwards they were arranged in eight piles of 400 bags each with those additional in another pile in a storage warehouse controlled by the Sands Company, a tag being placed on each pile marked "X-Dailey Kendall" which did not indicate ownership but the source from which the beans came.

The disputed ownership arises out of these facts: Sands, who was president of and controlled the Sands Company, in the month of July, after the beans had been bagged and piled and without plaintiff's knowledge, removed 800 bags from the warehouse where they were stored and sold and received the money for them. Thereafter in August, he purchased from plaintiff and paid for 800 bags and a few days later shipped 400 bags to Philadelphia to a subsidiary company of the Sands Company, Brayton Bean Company, "notify Vanderveer & Coleman." At the time of this sale plaintiff did not know of the previous misappropriation of the 800 bags. No contention is made that this was a bona fide sale; the transaction was a subterfuge to enable the Sands Company to raise money on the beans, which it proceeded to do by drawing a draft on Vanderveer & Coleman, attaching to it the negotiable bill of lading covering the shipment, endorsed in blank, and delivering the draft and bill of lading to the intervening defendant, who discounted the paper, giving the proceeds to Sands. All the rest of the beans, with the exception of 866 bags, were likewise fraudulently removed from the warehouse by Sands and misappropriated.

In September the Sands Company became bankrupt and Sands himself absconded. William G. Dailey, president of plaintiff, a few days prior to the bankruptcy, went to the Sands warehouse and then for the first time learned that his company's beans had been withdrawn and disposed of. He thereupon treated the sale of the 800 bags which he had made in August as applying to the 800 bags which had been misappropriated in July and applied the payment which had been made for the 800 bags purchased in August to the fraudulent earlier shipment. He traced the shipment of the 400 bags here in question to the Terminal Warehouse Company in Philadelphia and replevied them.

It is the contention of the intervening defendant that notwithstanding the fact of the fraudulent removal and sale of the 800 bags by Sands in July, the subsequent sale by plaintiff of 800 bags to the Sands Company carried title to the 400 bags in question to it. This position is predicated on the theory that the beans in question were shipped shortly after the sale, and that plaintiff as against the intervening defendant has no right to appropriate the payment for the 800 bags which it sold to the earlier like number which had been fraudulently removed and converted. It is important to bear in mind that when the Sands Company received the beans from plaintiff for processing, it did so under an agreement that they were to remain the property of plaintiff.

There can be no question that the Sands Company, by wrongfully appropriating plaintiff's property, became liable to pay to it the value thereof (13 C. J. 245) and plaintiff, not knowing of the misappropriation, had the right, when it was discovered, to apply the payment received from the subsequent sale to cover the fraudulently abstracted property. Appellant argues that plaintiff's president, when he made the subsequent sale of the 800 bags, sold beans in the warehouse, and that since the previous 800 bags which had been abstracted were not then in the warehouse, that transferred title to

the ones in question. The difficulty with this is that the seller supposed they were all in the warehouse, and did not know any had been removed. He was not selling any particular 800 bags, but 800 out of the lot. We think it would not be argued that, if the contest were between plaintiff and the Sands Company as to the ownership of the beans, the latter had any title to them because of the payment for 800 bags when it had already misappropriated to itself and disposed of that number; that it could duplicate its fraud and hold onto the proceeds. If it could not claim ownership under these circumstances, the intervening defendant cannot.

Under section 32 of the Bill of Lading Act of June 9, 1911, P. L. 838, a person to whom a negotiable document of title, such as a bill of lading in the pending case, has been duly negotiated, acquires thereby "such title to the goods as the person negotiating the bill to him had, or had ability to convey to a purchaser in good faith for value." As we have observed, the Sands Company had no title to the beans in question; nor did it, in our opinion, have the ability to convey title to a purchaser in good faith; plaintiff gave it no authority to sell any of the beans. The mere delivery of goods to a bailee does not clothe him with authority to transfer the bailor's title: Mackay v. Benjamin Franklin R. & H. Co., 288 Pa. 207, 210-11, and cases there cited. The Sands Company had the right to purchase beans, if payment was made therefor, but a sale by it before such purchase and payment would not pass title: Sargent v. Gile, 8 N. H. 325.

We are not unmindful of the cases holding that where a bailor has, by his own voluntary act, conferred upon his bailee the apparent right of property, or of disposal, he is estopped to deny the title of an innocent purchaser from the bailee. So, in Preston v. Witherspoon, 109 Ind. 457, 9 N. E. 585, where the plaintiff deposited wheat in a warehouse for storage, with knowledge that it would be commingled with other wheat belonging to the ware-

houseman, and that the latter was selling wheat from the common mass, the title of an innocent purchaser for value was upheld. The case now before us, however, presents a very different situation. Here the beans were deposited for storage and were kept separate from those of other shippers. The warehouseman had no right to sell any beans from the bins in which those of plaintiff were stored. The fact that such sales were made cannot affect plaintiff's title because they were not brought to his knowledge: McMahon v. Sloan, 12 Pa. 229. Under the circumstances, we cannot say that there was any estoppel.

Since, therefore, the Sands Company, which was a warehouseman, had no title to the beans, and had no ability to convey any title to them, the intervening defendant acquired none which he could maintain against their real owner.

The judgment is affirmed.