HANDLEY MOTOR COMPANY, INC., v. E. A. WOOD and W. W. WINSTEAD, TRADING AS W & W MOTOR COMPANY.

(Filed 4 November, 1953.)

**1. Appeal and Error § 51a—**

Where the decision upon appeal points out the crucial facts upon which the rights of the parties depend, the decision is the law of the case in respect to the issues, and in a subsequent trial upon substantially the same evidence the cause is properly submitted upon issues presenting to the jury in an ample manner the crucial facts as pointed out in the former decision, and appellant may not contend on a subsequent appeal that the trial court erred in refusing to submit another issue tendered.

**2. Courts § 14—**

Where, in an action instituted in this State, the rights of the parties depend upon the legal effect of a sale made in another state, the law of such other state controls the question.

MOTOR CO. *v.* WOOD.

**3. Evidence § 3—**

G.S. 8-4 requires the courts of this State to take judicial notice of the applicable law of another state.

**4. Sales § 12: Automobiles § 5: Payment § 2—Where check given in payment of cash sale is dishonored, owner does not part with title and in absence of estoppel may claim chattel from bona fide purchaser.**

The automobile in question was purchased in Pennsylvania from plaintiff. The purchaser gave a check in payment of the purchase price, which check was dishonored upon presentation. The purchaser sold the car to another dealer, and defendants acquired possession through *mesne* purchases from such dealer. The verdict of the jury established that the original purchase of the car was a cash sale. *Held:* Under the law of Pennsylvania title did not pass from plaintiff, and in the absence of estoppel, plaintiff is entitled to reclaim the chattel from defendants notwithstanding that defendants are *bona fide* purchasers for value or claim from or under *bona fide* purchasers. The distinction obtaining when the owner is induced to part with title through fraud is pointed out.

**5. Pleadings § 22c—**

A motion to amend after time for answering has expired is addressed to the discretion of the trial court, and the court's ruling thereon will not be reviewed on appeal unless a prejudicial abuse of discretion is clearly shown.

APPEAL by defendants from *Judge Joseph W. Parker,* and a jury, at June Term, 1953, of WILSON.

Civil action for the recovery of an automobile.

The facts are narrated in the numbered paragraphs which follow.

1. The plaintiff Handley Motor Company, Inc., deals in automobiles in the District of Columbia; Adolph Mozes, trading as Mozes Autos, wholesales second-hand automobiles in Pennsylvania; and the defendants E. A. Wood and W. W. Winstead, trading as W & W Motor Company, retail second-hand automobiles in North Carolina.

2. On 6 January, 1951, the plaintiff had the following transaction with James P. Junghans, Jr., who was allegedly a stranger to it, in the District of Columbia: Plaintiff and Junghans made a contract whereby plaintiff agreed to sell Junghans one of its new Ford cars for a cash price of $1,897.50. Junghans paid plaintiff $50.00 in cash thereon, and gave plaintiff his check for $1,847.50 on a District of Columbia bank for the remainder. Plaintiff believed the check to be good, and accepted it as the means of payment of the remainder of the sale price. As a consequence, plaintiff delivered the Ford car to Junghans. But plaintiff did not furnish Junghans any muniment of title. The check was found to be worthless on its due presentation to the bank.

3. These transactions occurred within the 24 hours next succeeding the delivery of the Ford car to Junghans: Junghans undertook to sell

the car to Leonard Goldberg for $1,835.00; Leonard Goldberg undertook to sell it to Lee Motors for $1,885.00; Lee Motors undertook to sell it to Adolph Mozes, trading as Mozes Autos, for $1,910.00; and Adolph Mozes, trading as Mozes Autos, undertook to sell it to the defendants for $2,000.00. Each transaction was sufficient *in form* to effect a transfer of the title to the Ford car. The transaction between Junghans and Goldberg took place either in the District of Columbia or Maryland. All the other transactions mentioned in this paragraph transpired in Pennsylvania.

4. Adolph Mozes, trading as Mozes Autos, delivered the Ford car to the defendants in Pennsylvania. They forthwith removed it to their place of business in Wilson County, North Carolina, where they offered it for sale.

5. Shortly thereafter the plaintiff discovered the whereabouts of the Ford car, and brought this action against the defendants for its recovery. The plaintiff sued out ancillary claim and delivery process in the action, but the defendants retained the car under an undertaking for replevy.

6. The pleadings of the parties, which consisted of a complaint, answer, and reply, placed in issue the title of the Ford car, and the right to its possession. They also sufficed to put in issue the allegation of the answer that the defendants "purchased said automobile for a valuable consideration without notice from . . . James P. Junghans, Jr., through *mesne* conveyances." The defendants did not allege, however, that the plaintiff was precluded by its conduct from denying the authority of Junghans to sell the car. The defendants were subsequently permitted to amend their answer so as to plead in express terms that their immediate predecessor, Adolph Mozes, trading as Mozes Autos, was a *bona fide* purchaser.

7. This action has been tried twice. The first trial was conducted before Judge Clawson L. Williams and a jury at the September Term, 1952, of the Superior Court of Wilson County. Both sides presented evidence at that time. Judge Williams submitted this issue to the jury: "Is the plaintiff the owner and entitled to the possession of the Ford automobile described and referred to in the complaint?" He charged the jury . . . as follows: "If you find the facts to be as all the evidence tends to show, you will answer the . . . issue No." The jury answered the issue "No," and Judge Williams adjudged that the defendants owned the Ford car and were entitled to its immediate possession. The plaintiff excepted to this judgment and appealed, assigning errors.

8. The case came before this Court on the plaintiff's appeal at the Spring Term, 1953, and is reported in *Motor Co. v. Wood,* 237 N.C. 318, 75 S.E. 2d 312, where the pleadings are analyzed and the evidence at the first trial is stated in an able and thorough opinion which *Justice R. Hunt Parker* wrote for the Court.

9. This Court awarded the plaintiff a new trial on the grounds that Judge Williams had erred in his peremptory instruction to the jury and that issues determinative of the entire controversy between the parties had not been submitted to the jury.

10. This Court held on the plaintiff's appeal that the peremptory instruction in favor of the defendants was erroneous for these reasons: "All the evidence shows that all the transactions as to the sale of the new Ford automobile described in the complaint between the plaintiff and James P. Junghans, Jr., and the delivery of it by the plaintiff to Junghans took place in the District of Columbia. Therefore, the sale in its substantive features is governed by the laws of the District of Columbia, and such laws on the doctrine of comity in the forum will be enforced in North Carolina, unless contrary to the public policy of this State. . . . All the evidence in this case tends to show that the sale of this car to Junghans was a cash sale, and that Junghans gave for the purchase price a worthless cheque. If a jury should so find from the evidence then under the laws of the District of Columbia no title to the car passed to Junghans, but the plaintiff retained the legal title. Such law will be enforced in the courts of North Carolina, because such is the law of this State."

11. This Court also held, in essence, that the pleadings raised these issues of fact: Whether the transaction between the plaintiff and Junghans in respect to the Ford car was a cash sale; whether Junghans paid the purchase price for the car with a worthless check; and whether the defendants, or Adolph Mozes, trading as Mozes Autos, or Lee Motors, or Leonard Goldberg acquired the car under a *bona fide* purchase. Since the question was not before it for decision on the plaintiff's appeal, this Court refrained from expressing any opinion as to what the legal rights of the parties would be if the jury on the retrial of the action should answer an issue of *bona fide* purchase in favor of the defendants and the other issues in favor of the plaintiff. It did point out, however, that the weight of authority in the country as a whole would require a judgment for the plaintiff if such findings should be made by the jury.

12. The second trial of the action was had before Judge Joseph W. Parker and a jury at the June Term, 1953, of the Superior Court of Wilson County. The parties offered substantially the same evidence at that time as that presented by them at the first trial. The defendants did not contend at the second trial that either Leonard Goldberg or Lee Motors took the Ford car as a *bona fide* purchaser. Issues were submitted to and answered by the jury as follows: (1) Was the sale of the Ford automobile described in the complaint by Handley Motor Company, Inc., to J. P. Junghans, Jr., a cash transaction, as alleged in the complaint? Answer: Yes. (2) Was the check given by J. P. Junghans, Jr., to Handley Motor Company, Inc., for $1,847.50, as payment for the balance

of the purchase price of said Ford automobile worthless as alleged in the complaint? Answer: Yes. (3) Was Mozes Autos an innocent purchaser of said Ford automobile for value without notice? Answer: Yes. (4) Are the defendants innocent purchasers of said Ford automobile for value without notice? Answer: Yes. (5) Is the plaintiff the owner and entitled to the possession of the Ford automobile described in the complaint? Answer: Yes. (6) What was the value of said Ford automobile at the time it was taken under the writ of claim and delivery in this action? Answer: $1,847.50.

13. The trial judge concluded as a matter of law on the verdict that the plaintiff owned the Ford car and was entitled to its immediate possession. He thereupon adjudged that the plaintiff should recover the car, if delivery could be had, and that the plaintiff should recover the value of the car, *i.e.*, $1,847.50, from defendants and the surety on their undertaking for replevy, with appropriate interest, if delivery could not be had.

14. The defendants appealed from this judgment. They assign as error the action of the trial judge in denying their motion for leave to amend their answer so as to plead the affirmative defense of estoppel; in refusing to submit to the jury the issue tendered by them; in instructing the jury that "it would have to answer the fifth issue Yes . . . if it answered the first and second issues Yes"; in refusing to set aside the verdict on the fifth issue on the ground that it was "contrary to the evidence and the law"; and in entering the judgment.

*Gardner, Connor & Lee for plaintiff, appellee.*
*Carr & Gibbons for defendants, appellants.*

ERVIN, J. The defendants tendered this issue: "Was it the intent of Handley Motor Company and James P. Junghans, Jr., that legal title to the Ford automobile should pass to Junghans at the time Junghans' check was given in payment?" They asked the trial judge to submit such issue to the jury instead of the first and second issues or in addition to them, and saved an exception to his refusal to pursue either of these courses.

The defendants stressfully contend that the submission of this issue to the jury was essential to the determination of the crucial factual question whether or not the legal title of the Ford car passed from the plaintiff to Junghans. We are precluded from considering this contention as an original proposition by this rule: Where the evidence on a second or succeeding appeal is substantially the same as that on the first or preceding appeal, the matters adjudicated on the first or preceding appeal constitute the law of the case and will not be reconsidered or readjudicated on the second or succeeding appeal. *Bruce v. Flying Service,* 234 N.C. 79, 66

S.E. 2d 312; *Cannon v. Cannon,* 226 N.C. 634, 39 S.E. 2d 821; *Cheshire v. First Presbyterian Church,* 222 N.C. 280, 22 S.E. 2d 566; *Pinnix v. Griffin,* 221 N.C. 348, 20 S.E. 2d 366.

The evidence on the first trial and the former appeal is substantially the same as that on the second trial and this appeal. This Court held in express terms on the former appeal that "if the jury finds from the evidence that the transaction between the plaintiff and Junghans was a cash sale and that Junghans paid the purchase price for the car with a worthless check, then no title passed to Junghans and the legal title remained in the plaintiff." *Motor Co. v. Wood, supra.* It thus appears that under the law of the case the first and second issues presented to the jury in an ample manner the crucial factual question whether or not the legal title to the Ford car passed from the plaintiff to Junghans. As a consequence, there was no need for the trial judge to submit to the jury the issue tendered by the defendants.

The trial judge utilized the fifth issue as a mere vehicle for the conveyance of his legal conclusion that the affirmative answers of the jury to the first and second issues entitled the plaintiff to recover the automobile from the defendants despite the facts that the defendants and their immediate predecessor, Adolph Mozes, trading as Mozes Autos, were *bona fide* purchasers. For this reason, we attribute no factual significance whatever to the answer of the jury to the fifth issue, and deem it wholly unnecessary to discuss the exceptions relating to that issue.

The exception to the entry of the judgment raises the legal question whether the findings of the jury on the other issues support the decision of the court in respect to the rights of the parties.

This legal question becomes more intelligible when it is stated in this fashion: Where the seller contracts to sell a chattel to the buyer for cash, and the seller accepts a check from the buyer as a means of payment of the cash and delivers the chattel to the buyer in the belief that the check is good and will be paid on presentation, and the check proves to be worthless or is dishonored on due presentation, can the seller reclaim the chattel from a *bona fide* purchaser from or under the buyer, or from the vendee of a *bona fide* purchaser from or under the buyer, if the seller has not been guilty of such conduct as will create an estoppel against him?

The trial judge answered this question in the affirmative when he entered the judgment. Counsel for the defendants assert with much earnestness and eloquence that he erred in so doing.

Since the transaction between the defendants and Adolph Mozes, trading as Mozes Autos, and the transaction between Adolph Mozes, trading as Mozes Autos, and Lee Motors occurred in Pennsylvania, we must look to the law of that State for the answer to the question. *Ellison v. Hunsinger,* 237 N.C. 619, 75 S.E. 2d 884; *Motor Co. v. Wood, supra; Price*

*v. Goodman,* 226 N.C. 223, 37 S.E. 2d 592.   The statute now codified as G.S. 8-4 requires us to take judicial notice of the law of Pennsylvania governing the matter under consideration.   *Suskin v. Hodges,* 216 N.C. 333, 4 S.E. 2d 891.

Diligent search fails to uncover a Pennsylvania decision passing squarely upon the question under present consideration.   A conflict of authority exists in the other jurisdictions whose courts have had occasion to make direct pronouncement on the subject.   Williston on Contracts (Rev. Ed.), sections 730-733; Williston on Sales (Rev. Ed.), section 346a; 46 Am. Jur., Sales, section 478; 77 C.J.S., Sales, sections 266, 294c. We take note of certain related rules of law which obtain in Pennsylvania before considering the conflict of authority on the specific question now before us.   These related rules are as follows:

1. A cash sale is one in which the title to the property and the purchase price pass simultaneously, and the title remains in the seller until the purchase price is paid, even though possession of the property is delivered to the buyer.   *United States v. Lutz,* 142 F. 2d 985; *Frech v. Lewis,* 218 Pa. 141, 67 A. 45, 11 L.R.A. (N.S.) 948, 120 Am. S. R. 864, 11 Ann. Cas. 545; *Werley v. Dunn,* 56 Pa. Super. 254; *Frech v. Lewis,* 32 Pa. Super. 279; *Windle v. Moore* (Pa.), 1 Chest. Co. Rep. 409; *Refining & Storage Co. v. Miller* (Pa.), 7 Phila. 97; Williston on Contracts (Rev. Ed.), sections 730-733; 77 C.J.S., Sales, section 262.

2. Even a *bona fide* purchaser of a chattel acquires no property right in it at common law or in equity as against the true owner, if it is sold by a third person who, although in possession, has no title to it, unless the true owner authorizes or ratifies the sale, or is precluded by his own conduct from denying the third person's authority to make it.   *Kendall Produce Co. v. Terminal Warehouse & Transfer Co.,* 295 Pa. 450, 145 A. 511; *Mackay v. Benjamin Franklin Realty & Holding Co.,* 288 Pa. 207, 135 A. 613, 50 A.L.R. 1164; *Loitch v. Sanford Motor Truck Co.,* 279 Pa. 160, 123 A. 658; *McQuade v. North American Smelting Co.,* 208 Pa. 504, 57 A. 984; *Quinn v. Davis,* 78 Pa. 15; *O'Connor v. Clark,* 170 Pa. 318, 32 A. 1029, 29 L.R.A. 607; *Miller Piano Co. v. Parker,* 155 Pa. 208, 26 A. 303, 35 Am. S. R. 873; *McMahon v. Sloan,* 12 Pa. 229, 51 Am. D. 303; *Werley v. Dunn, supra;* 46 Am. Jur., Sales, section 464; 77 C.J.S., Sales, section 295.

3. The rule stated in the preceding paragraph is embodied in the provision of the Uniform Sales Act and the statutory law of Pennsylvania that "subject to the provisions of this Act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."   Uni-

form Sales Act, section 23 (1); Purdon's Pennsylvania Statutes (1936 Compact Edition), title 69, section 201.

4. "In determining what protection is afforded to a *bona fide* purchaser of goods obtained by fraud, the nature and effect of the fraud practiced, rather than the mere presence or existence of fraud, is controlling." 77 C.J.S., Sales, section 294. This is true because in the absence of an estoppel, one is not entitled to protection as a *bona fide* purchaser unless he holds the legal title to the property in dispute. *Jones v. Zollicoffer,* 4 N.C. 645, 7 Am. D. 708; 46 Am. Jur., Sales, section 464; 77 C.J.S., Sales, section 288. As a consequence, an owner who is induced by the fraud of the buyer to part with the possession of his chattel, and no more, can reclaim it from a *bona fide* purchaser from or under the fraudulent buyer, unless the *bona fide* purchaser can bring himself within the protection of some principle of estoppel. *Levy v. Cooke,* 143 Pa. 607, 22 A. 857; *Neff v. Landis,* 110 Pa. 204, 1 A. 177; *Barker v. Dinsmore,* 72 Pa. 427, 13 Am. S. R. 697; *Werley v. Dunn, supra;* 46 Am. Jur., Sales, section 470; 77 C.J.S., Sales, section 294. But an owner who is induced by the fraud of the buyer to part with the legal title to his chattel cannot recover it from a *bona fide* purchaser from or under the fraudulent buyer. *Levy v. Cooke, supra; Neff v. Landis, supra; Sinclair v. Healy,* 40 Pa. 417, 80 Am. D. 589; *Smith v. Smith,* 21 Pa. 367, 60 Am. D. 51; *McKinley v. McGregor,* 3 Whart. (Pa.), 369, 31 Am. D. 522; *G. I. Motors v. Broadway Motors,* 172 Pa. Super. 492, 94 A. 2d 201.

5. The rule stated in the preceding paragraph is incorporated in the provision of the Uniform Sales Act and the statutory law of Pennsylvania that "when the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title." Uniform Sales Act, section 24; Purdon's Pennsylvania Statutes (1936 Compact Edition), title 69, section 202.

6. "After property has passed into the hands of a *bona fide* purchaser, every subsequent purchaser stands in the shoes of such *bona fide* purchaser and is entitled to the same protection as the *bona fide* purchaser, irrespective of notice, unless such purchaser was a former purchaser, with notice, of the same property prior to its sale to the *bona fide* purchaser." 77 C.J.S., Sales, section 296d. See, also, in this connection: *Seeley v. Garey,* 109 Pa. 301, 5 A. 666.

We return at this juncture to the conflict of authority outside Pennsylvania on the precise point under consideration. The first line of authority declares that, nothing else appearing, where a chattel is sold for cash, and a check is tendered as the cash payment, and the seller delivers the chattel to the buyer, no title whatever passes from the seller to the buyer until

the check is paid or honored; and that in the absence of some estoppel on his part, the seller can reclaim the chattel from a *bona fide* purchaser from or under the buyer, or from a subsequent purchaser from or under such *bona fide* purchaser, in case the check is not paid or honored on due presentation. *Motor Co. v. Wood, supra; De Vries v. Sig Ellington & Co.,* 100 F. Supp. 781; *Davidson v. Conner,* 254 Ala. 38, 46 So. 2d 832; *Moore v. Long,* 250 Ala. 47, 33 So. 2d 6; *Barksdale v. Banks,* 206 Ala. 567, 90 So. 913; *McClure Motor Co. v. McClain,* 34 Ala. App. 614, 42 So. 2d 266; *Dobbins v. Martin Buick Co.,* 216 Ark. 861, 227 S.W. 2d 620; *Pugh v. Camp,* 213 Ark. 282, 210 S.W. 2d 120; *Sykes v. Carmack,* 211 Ark. 288, 202 S.W. 2d 765; *Clark v. Hamilton Diamond Co.,* 209 Cal. 1, 284 P. 915; *Gustafson v. Equitable Loan Assoc.,* 186 Minn. 236, 243 N.W. 106; *National Bank of Commerce v. Chicago, B. & N. R. Co.,* 44 Minn. 224, 46 N.W. 342, 9 L.R.A. 263, 20 Am. S. R. 566; *Brotchener v. Ullman,* 141 Misc. 102, 252 N.Y.S. 244; *Plummer v. Kingsley,* 190 Or. 378, 226 P. 2d 297; *Johnson v. IdnKovetz,* 57 Or. 24, 102 P. 799, 110 P. 398; *Ohio Motors, Inc., v. Russell, Inc.,* 193 Tenn. 524, 246 S.W. 2d 962; *Hale Co. v. Beley Cotton Co.,* 154 Tenn. 689, 290 S.W. 994; *Young. v. Harris-Costner Co.,* 152 Tenn. 15, 268 S.W. 125, 54 A.L.R. 516; *Cowan v. Thompson,* 25 Tenn. App. 130, 152 S.W. 2d 1036; *Goze v. Brooks* (Tex. Civ. App.), 279 S.W. 979; *Richardson v. Seattle First Nat. Bk.,* 38 Wash. 2d 314, 229 P. 2d 341; *Frye v. Boltman,* 182 Wash. 447, 47 P. 2d 839; *Quality Shingle Co. v. Old Oregon Lumber & Shingle Co.,* 110 Wash. 60, 187 P. 705; Williston on Contracts (Rev. Ed.), sections 730-733; Williston on Sales (Rev. Ed.), section 346a; 46 Am. Jur., Sales, section 478; 77 C.J.S., Sales, sections 266, 294c. The second line of authority holds that, nothing else appearing, where the parties bargain for the cash sale of a chattel which the seller delivers to the buyer, and payment of the purchase price is made by a check which afterwards proves to be worthless, a voidable legal title passes from the seller to the buyer; and that in consequence a *bona fide* purchaser acquires an indefeasible title to the chattel if he purchases it from or under the buyer before his voidable title is avoided by the seller. Williston on Contracts (Rev. Ed.), sections 730-733; Williston on Sales (Rev. Ed.), section 346a; 46 Am. Jur., Sales, section 478; 77 C.J.S., Sales, sections 266, 294c, 296b.

The courts of Pennsylvania have adhered without variableness or shadow of turning to the rule that on a cash sale of personal property the legal title remains in the seller until the purchase price is paid, even though possession of the property is delivered to the buyer. For this reason, we are constrained to conclude that when it accepted the worthless check tendered by Junghans and delivered its Ford automobile to him, the plaintiff parted with the possession of the automobile, and nothing more. This conclusion assigns Pennsylvania to a place among the juris-

dictions where the first line of authority obtains, and enables the plaintiff to reclaim the automobile from the defendants, notwithstanding the facts that the defendants are *bona fide* purchasers and vendees of a *bona fide* purchaser. Our conclusion on this phase of the controversy harmonizes with the *obiter dicta* supporting the first of the headnotes which precede the opinion of the Superior Court of Pennsylvania in *Werley v. Dunn, supra.* This headnote is couched in these words: "Where on a sale of goods the price is to be paid partly by notes and partly in cash, and the seller delivers the goods, accepts a note and a check, and the check is not paid because there are no funds in bank, title to the goods does not pass, and the seller may pursue them in the hands of an innocent purchaser for value."

The exception to the denial of the motion of the defendants for permission to amend their answer so as to allege that the plaintiff was estopped by its conduct from denying the authority of Junghans to sell the Ford automobile is untenable.

The action pended for 28 months before the motion to amend was made. It is settled procedural law in this State that a motion to amend an answer in an action pending in the Superior Court after the time for answering has expired is addressed to the discretion of the Superior Court, and that the ruling of the Superior Court on the motion to amend will not be reviewed by the Supreme Court on appeal, unless a prejudicial abuse of its discretion by the Superior Court is clearly shown. *Hardy v. Mayo,* 224 N.C. 558, 31 S.E. 2d 748.

There is no basis for any contention that the Superior Court abused its discretion in disallowing the motion to amend the answer. Indeed, it affirmatively appears that it would have profited the defendants nothing had their motion to amend their answer been granted. Since the evidence offered by the parties at the second trial was substantially the same as that presented by them at the first, the observation of this Court on the former appeal that "there is no . . . evidence to support . . . (a) . . . plea of estoppel" still applies to this case with undiminished vigor. *Motor Co. v. Wood, supra.*

The judgment of the Superior Court must be upheld, for there is in law
No error.