JOHN S. HALE & CO., INC. *v.* BELEY COTTON CO. & UNION
& PLANTERS BANK & TRUST CO.*

(*Nashville,* December Term, 1926.)

Opinion filed March 30, 1927.

1. **Statutory distinction between the rights of one to whom a document of title has been negotiated and the rights of one to whom such document has been transferred. Commercial paper.**

The distinction under the Negotiable Instruments Act is everywhere appreciated and the Warehouse Receipt Act and the Federal Bills of Lading Act have preserved the distinction between rights of one to whom a document of title has been negotiated and the rights of one to whom such document has been transferred. (Post p. 692.)

2. **SAME. Same.**

The rights of one taking a Warehouse receipt by negotiation and one taking such receipts by transfer are quite different. (Post, p. 693.)

Citing: Secs. 39, 41, 42 of Uniform Warehouse Receipt Act, supra. James v. Meriewether Graham Oliver Co., 152 Tenn., 528; Starkey v. Nixon, 151 Tenn., 637.

3. **SAME. Same.**

Where parties contemplate an exchange of a staple for cash and not an extension of credit, the symbolic delivery of the staple to the buyer by the seller, upon receipt of the former's check, subsequently dishonored, does not affect a transfer of title to the goods. (Post, p. 694.)

Citing: Young v. Harris-Cortner et al., 152 Tenn., 15; Dillard & Coffin Co. v. Beley Cotton Co., 150 Tenn., 195.

154 Tenn.—44.

4. SAME. Same.

Where the staple involved consisted of three lots and the first lot is represented by Negotiable Warehouse receipts which were exchanged for Clearance Certificates and these attached to drafts made on account of this lot and deposited with the banks, the Clearance Certificates reciting on their face that these were not negotiable, **held** that the bank acquired no better title than the drawer of the draft possessed. (Post, p. 694.)

**Citing:** Dillard & Coffin Co. v. Beley Cotton Co., supra.

5. SAME. Same.

The second lot of such staple was represented by Warehouse Receipts and were negotiable in form, but none had been indorsed, **held** that such were **order** receipts and not **bearer** receipts and proper indorsement was a condition precedent to the obligation of the warehouseman and were incapable of negotiation by delivery or indorsement. (Post, p. 695.)

**Citing:** Arbuthnot v. Richheimer, 139 La., 797; Negotiable Instrument law, Acts of 1909, ch. 336; Uniform Warehouse Receipt Act, Acts 1909, ch. 273; Laws of 1915, Act 273; Kirby's Digest secs. 9957, 10,010 Arkansas.

6. SAME. Same.

Where the third lot of the staple was represented by bills of lading, which bills of lading were delivered to the purchaser and attached to drafts deposited with the bank, and the stipulation providing the "surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property" the rights of parties are controlled by the provisions of the Federal Bills of Lading Act. The provisions of that Act are similar to the provisions of the other Acts and make distinction between the negotiation and the transfer of documents of title. (Post, p. 700.)

**Citing:** 39 U. S. Stat. L. 338, secs. 3, 27, 28, 30, 31, 32.

**Citing:** Tennessee Egg Co. v. Monroe, 151 Tenn., 121.

---

*Headnotes 1. Sales, 35 Cyc., pp. 323, 334; 2. Warehousemen, 40 Cyc., p. 418; 3. Warehousemen, 40 Cyc., p. 426 (Anno.); 4. Carriers, 10 C. J., section 271.

FROM SHELBY

Appeal from the Chancery Court of Shelby County.—

HON. WIGHTMAN HUGHES, Chancellor.

WILSON, GATES & ARMSTRONG, for plaintiff.

JOHN D. MARTIN, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to recover the proceeds of certain bales of cotton from the Union & Planters Bank & Trust Company of Memphis. There was a decree in favor of complainant, John S. Hale & Company, Inc., for $35,704.13, from which the bank appealed to the Court of Appeals. The latter court affirmed the decree of the Chancellor and the bank has filed a petition for *certiorari*.

In June, 1923, the complainant sold to the Beley Cotton Company 222 bales of cotton. This cotton was represented by warehouse receipts and bills of lading. These documents of title were delivered by complainant to the Beley Cotton Company upon receipt of checks of that company aggregating $33,738.83, drawn on defendant bank. All these checks were dishonored.

In exchange for twenty-five warehouse receipts thus acquired by the Beley Cotton Company, issued by a Memphis warehouse, the Beley Cotton Company procured from that warehouse clearance certificates for twenty-five bales of cotton. The Beley Cotton Company then at-

tached these clearance certificates, the remaining warehouse receipts and the bills of lading to drafts drawn by it on customers and deposited these drafts to the credit of its account in defendant bank. Before presentation of the checks issued by the Beley Cotton Company to the complainant, the credit of the Beley Cotton Company with defendant bank from the drafts just mentioned had been exhausted by other checks of that company, so that when the complainant's checks were presented to defendant bank on the next day after they were received, these checks were returned unpaid as aforesaid.

It is conceded upon the record and so found by the lower courts that the sale of this cotton by complainant to the Beley Cotton Company was intended to be a cash transaction. The parties having contemplated an exchange of cotton for cash, and not an extension of credit, the symbolic delivery of the cotton to the buyer by the seller, upon receipt of the former's checks subsequently dishonored, did not effect a transfer of title to the goods. *Young* v. *Harris-Cortner Co., et al.,* 152 Tenn., 15; *Dillard & Coffin Co.* v. *Beley Cotton Co.,* 150 Tenn., 195.

The defendant bank was an innocent purchaser for value from the Beley Cotton Company of the documents of title above described, and the question to be determined is the right of the bank in the premises.

The cotton involved consisted of three lots and the case will be simplified by dealing with each lot separately.

The first lot of cotton was composed of twenty-five bales. It was represented by negotiable warehouse receipts. Beley Cotton Company did not undertake to negotiate these receipts to the bank, but as before indi-

cated, exchanged said receipts with the Memphis ware-
house which issued them for clearance certificates of that
warehouse and pinned the clearance certificates to the
draft made on account of this lot of cotton and depos-
ited with the bank. The clearance certificates recited on
their face that they were not negotiable. Under these
circumstances we think the bank acquired no better title
to this lot of cotton than the Beley Cotton Company pos-
sessed.

Had the Beley Cotton Company deposited the ware-
house receipts with the bank, the bank would doubtless
have thus obtained good title to the cotton, notwithstand-
ing the defect in the title of the Beley Cotton Company,
as will appear from provisions of the Uniform Ware-
house Receipts Act, Chapter 336 of the Acts of 1909,
hereinafter set out. The Beley Cotton Company, how-
ever, could not pass a title which it did not have, except
by an instrument to which the law gave negotiability, and
as we have seen, the clearance certificates were express-
ly non-negotiable. This branch of the case is controlled
by the decision of this court in *Dillard & Coffin Co.* v.
*Beley Cotton Co.*, supra, in which it was held that one
without title to cotton could not pass title thereto by de-
positing the cotton in a warehouse and undertaking to
sell non-negotiable clearance certificates issued on ac-
count of same.

The second lot of cotton was represented by ware-
house receipts issued by a warehouse at Blytheville, Ar-
kansas, for 47 bales. These warehouse receipts acknowl-
edged the deposit of bales of cotton by the Lesser Gold-
man Cotton Company and provided:

"Upon return of this receipt properly endorsed and the payment of all charges and liabilities due the undersigned warehouseman, as stated herein, said one bale of cotton will be delivered to the above-named depositor or bearer."

While the receipts were negotiable in form, none of them had been endorsed by the Lesser Goldman Cotton Company, the depositor of the cotton.

In our opinion these were *order* receipts and not *bearer* receipts. The obligation assumed by the warehouseman was to deliver the cotton called for, upon the return of the receipts "properly endorsed," either to the depositor or to the bearer. Proper endorsement was a condition precedent to the obligation of the warehouseman as for a negotiable receipt. There could be no proper endorsement except by the depositor named in the receipts, therefore, the warehouseman did not undertake by these receipts to deliver the goods to the bearer thereof, but undertook to deliver the goods upon the order of a specified person.

Considering a warehouse receipt similar in form in *Arbuthnot* v. *Richheimer*, 139 La., 797, the Supreme Court of that State said:

"The receipt in question does not make the goods deliverable to the depositor, but 'only on the return of this receipt properly endorsed,' and Richheimer & Co., the depositor, was the only person named in the receipt, and therefore the only person who could properly endorse it. 'Order' means an order by endorsement on he receipt. *Id.* Sec. 58. The intent to make the instrument a 'negotiable warehouse receipt' was written on its face, and is necessarily implied by the words 'properly en-

dorsed,' which presuppose that the depositor has the capacity to transfer the receipt by his endorsement. As the receipt by its terms makes the goods deliverable only on the return of the receipt properly endorsed, we must construe it as authorizing the depositor to endorse, or as making no provision whatever for the delivery of the goods to any person. The last construction is not permissible, because it would render the cause nugatory.''

Such being the character of the receipts in question, and none of them bearing the endorsement of the depositor to whom they were issued, the receipts were not negotiable under the provisions of Chapter 336 of the Acts of 1909. Warehouse receipts in such form can only be transferred, not negotiated. A failure to observe the distinction between the rights of parties acquiring documents of title by transfer, rather than by negotiation, has apparently led to the confusion of defendant bank as to its rights in this case.

The Uniform Warehouse Receipts Act has been adopted both in Tennessee and Arkansas. It is Chapter 336 of the Acts of 1909 in Tennessee and Act 273 of the Laws of 1915, Kirby's Digest, sections 9957-10010, in Arkansas.

Section 5 of the Act is in these words:

''Sec. 5. Definition of negotiable receipt. A receipt in which it is stated that the goods received will be delivered to the bearer or to the order of any person named in such receipt is a negotiable receipt.

''No provision shall be inserted in a negotiable receipt that it is non-negotiable. Such provision, if inserted, shall be void.''

Sections 37 and 38 of the Act provide for the negotiation of negotiable warehouse receipts.

Section 37 provides for negotiation by delivery and is in these words:

"Sec. 37. Negotiation of negotiable receipts by delivery. A negotiable receipt may be negotiated by delivery:

"(a) Where, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the bearer, or

"(b) Where, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of a specified person, and such person or a subsequent indorsee of the receipt has indorsed it in blank or to bearer.

"(c) Where, by the terms of a negotiable receipt, the goods are deliverable to bearer or where a negotiable receipt has been indorsed in blank or to bearer, any holder may indorse the same to himself or to any other specified person, and in such case the receipt shall thereafter be negotiated only by the indorsement of such indorsee."

In the receipts before us, the warehouseman did not undertake to deliver the goods to bearer. The person to whose order the warehouseman undertook to deliver the goods did not, nor did any subsequent endorsee, undertake to endorse the receipts in blank or to bearer. Obviously and as seen subsection (c) has no application. These receipts, therefore, were not negotiable by delivery.

Section 38 provides for negotiation by endorsement. That section is in these words:

"Sec. 38. Negotiation of negotiable receipts by indorsement. A negotiable receipt may be negotiated by the indorsement of the person to whose order the goods are, by the terms of the receipt, deliverable. Such in-

dorsement may be in blank, to bearer or to a specified person. If indorsed to a specified person, it may be again negotiated by the indorsement of such person in blank, to bearer or to another specified person. Subsequent negotiation may be made in like manner.''

Since the receipts we are considering had not been endorsed by the person to whose order the goods were deliverable, they could not be endorsed and negotiated by any one else. Although the Beley Cotton Company did endorse the receipts, such endorsement by it was not effective for purposes of negotiation. The goods were not deliverable to the Beley Cotton Company.

It results from the sections of the Act above set out that these warehouse receipts, in the form in which they were held by the Beley Cotton Company, were incapable of negotiation, either by delivery or endorsement.

Section 39 of the Uniform Act provides for the transfer of warehouse receipts, and is as follows:

''Sec. 39.   Transfer of receipts.   A receipt which is not in such form that it can be negotiated by delivery may be transferred by the holder by delivery to a purchaser or donee.

''A non-negotiable receipt cannot be negotiated, and the indorsement of such a receipt gives the transferee no additional right.''

While, therefore, these warehouse receipts were not susceptible of negotiation by the Beley Cotton Company, a transfer of the receipts was authorized by section 39. But the rights of one taking warehouse receipts by negotiation and one taking such receipts by transfer are quite different.

The rights of one who takes a receipt by negotiation are thus set out in the statute.

"Sec. 41. Rights of person to whom a receipt has been negotiated. A person to whom a negotiable receipt has been duly negotiated acquires thereby:

"(a) Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the recept had or had ability to convey to a purchaser in good faith for value, and

"(b) The direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

We have discussed the effect of the negotiation of warehouse receipts in two recent cases and it is unnecessary to repeat that discussion here. See *James* v. *Meriwether Graham Oliver Co.*, 152 Tenn., 528, and *Starkey* v. *Nixon*, 151 Tenn., 637.

The rights of one who takes a receipt by transfer are declared by the Statute as follows:

"Sec. 42. Rights of person to whom a receipt has been transferred. A person to whom a receipt has been transferred but not negotiated, acquires thereby, as against the transferor, the title of the goods, subject to the terms of any agreement with the transferor."

· · · · ·

In the language of the Statute, the transferee of a warehouse receipt takes title to the goods "as against the transferor." That is the transferee takes the title

of the transferor.  A transferee of such receipt does not acquire the title to the goods which is taken by one to whom the receipt has been negotiated under section 41, supra.

Speaking of sections 37, 38, and 39, relating to the negotiation and transfer of receipts, a note of the Commissioners on Uniform Laws is as follows:

''The three preceding sections follow the terminology of the Negotiable Instruments Law in distinguishing 'negotiation' and 'transfer.'  Section 39 applies not only to the transfer of non-negotiable receipts, but also to the transfer without a necessary indorsement of negotiable receipts.''  3 U. L. A.  Page 73.

In *Landis* v. *White,* 127 Tenn., 504, this court pointed out that the transferee of a negotiable note, taking it for value without endorsement, acquired only such title as the transferor had, construing section 49 of the Negotiable Instruments Law, chapter 94 of the Acts of 1899.

We must accordingly hold that defendant bank in this case got no better title to the cotton represented by these warehouse receipts than was possessed by the Beley Cotton Company.  As heretofore seen, that Company acquired no title by reason of the fact that its checks given for the cotton were dishonored.

The third lot of cotton was represented by bills of lading for 150 bales, which bills of lading were delivered by the complainant to Beley Cotton Company, and attached by that Company to drafts deposited by it with defendant bank.

A stipulation concerning these bills of lading appears in the transcript and contains the following:

"It was agreed in the court below and it is here agreed that all of said Exhibits to said answer are supplied in the record by copies of originals, with the exception of Exhibits A., and B., which were correct copies of two bills of lading covering respectively 75 bales of cotton marked 'XYNO' and 75 bales of cotton marked 'XYES' which were attached to a draft for $21,690.84, drawn by Beley Cotton Company on Manget Brothers, dated June—, 1923, and it is stipulated and agreed that said bills of lading were shipper's order bills of lading in which Manget Brothers appeared as shippers and the cotton was consigned to the order of shippers, notify Manget Brothers, Trion, Ga., said bills of lading being drawn in compliance with the Federal Bills of Lading Act, and being in the same form as the bills of lading marked Exhibits, K. L. and M., to the deposition of George Harper, Jr., and which recited a receipt form by the Southern Railway Co., of said cotton, and which contained this language, as does the said form: ''The surrender of this original order bill of lading, properly endorsed shall be required before the delivery of the property.' It is stipulated and agreed that said bills of lading were not endorsed by Manget Brothers, nor by any one else, when the injunction was issued and served in this case, nor thereafter until sale was made of the cotton by agreement of the parties, when it was expressly stipulated that this sale and this endorsement should not prejudice the rights of either party to this suit.''

The rights of the parties as to this lot of cotton are controlled by the provisions of the Federal Bills of Lading Act, 39 Stat. L. 538. The pertinent provisions of

that Act are similar to quoted provisions of the Uniform Warehouse Receipts Act, and the Federal Act makes the same distinction between the negotiation and the transfer of documents of title.

Relevant Sections of the Bills of Lading Act are as follows:

"Sec. 3. (Order bill defined—negotiability.) That a bill in which it is stated that the goods are consigned or destined to the order of any person named in such bill is an order bill. Any provision in such a bill or in any notice, contract, rule, regulation, or tariff that it is non-negotiable shall be null and void and shall not affect its negotiability within the meaning of this Act unless upon its face and in writing agreed to by the shipper."

"Sec. 27. (Order bill—negotiation by delivery.) That an order bill may be negotiated by delivery where, by the terms of the bill, the carrier undertakes to deliver the goods to the order of a specified person, and such person or a subsequent indorsee of the bill has indorsed it in blank."

"Sec. 28. (Order bill—negotiation by indorsement.) That an order bill may be negotiated by the indorsement of the person to whose order the goods are deliverable by the tenor of the bill. Such indorsement may be in blank or to a specified person. If indorsed to a specified person, it may be negotiated again by the indorsement of such person in blank or to another specified person. Subsequent negotiation may be made in like manner."

"Sec. 29. (Transfer of bill by delivery—negotiation of straight bill.) That a bill may be transferred by the holder by delivery, accompanied with an agreement, express or implied, to transfer the title to the bill or to

the goods represented hereby. A straight bill cannot be negotiated free from existing equities, and the indorsement of such a bill gives the transferee no additional right.''

''Sec. 30. (Order bill—by whom negotiated.) That an order bill may be negotiated by any person in possession of the same, however such possession may have been acquired, if by the terms of the bill the carrier undertakes to deliver the goods to the order of such person, or if at the time of negotiation the bill is in such form that it may be negotiated by delivery.''

''Sec. 31. (Title acquired by person negotiating order bill.) That a person to whom an order bill has been duly negotiated acquires thereby—

''(a) Such title to the goods as the person negotiating the bill to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the consignee and consignor had or had power to convey to a purchaser in good faith for value; and

''(b) The direct obligation of the carrier to hold possession of the goods for him according to the terms of the bill as fully as if the carrier had contracted directly with him.''

''Sec. 32. (Title acquired by person to whom bill has been delivered but not negotiated.) That a person to whom a bill has been transferred, but not negotiated, acquires thereby as against the transferor the title to the goods, subject to the terms of any agreement with the transferor. If the bill is a straight bill such person also acquires the right to notify the carrier of the transfer to him of such bill and thereby to become the direct obligee of whatever obligations the carrier owed to the

transferor of the bill immediately before the notification."

This court has explained the difference between straight bills of lading and order bills of lading in *Tennessee Egg Co.* v. *Monroe,* 151 Tenn., 121. As appears from the stipulation, we are here dealing with order bills not endorsed by the person to whom the carrier undertook to deliver the goods.

By section 27 order bills of lading may be negotiated by delivery when endorsed by the person to whom the carrier undertakes to deliver the goods or by a subsequent endorsee. By section 28 they may be negotiated by endorsement when endorsed by "the person to whose order the goods are deliverable by the tenor of the bill."

The bills of lading in controversy had not been endorsed by Manget Bros., the persons to whom the carrier had undertaken to deliver the goods, when they came into the hands of the bank. They were not in such shape that they might be negotiated by delivery. (Sec. 30). They were not in negotiable form at all.

The bank, therefore, did not acquire the title to the goods which the person who negotiated the bill might have conveyed under a negotiable bill of lading to a purchaser in good faith for value (sec. 31), but acquired only that title to the goods taken by one to whom a bill of lading has been transferred. (Sec. 32). That is, title "as against the transferor"—the transferor's title.

By section 43 of the Warehouse Receipts Act and section 33 of the Federal Bills of Lading Act, when a negotiable receipt or order bill of lading is transferred for value by delivery "and the endorsement of the transferor is essential for negotiation, the transferee ac-

quires a right against the transferor to compel him to endorse'' the receipt or bill, ''unless a contrary intention appears.'' This is of no avail, however, to the bank, by reason of the further provision of these sections that ''The negotiation shall take effect as of the time when the endorsement is actually made.'' This suit had intervened before any effort was made to have the documents here involved properly endorsed.

The briefs have cited many cases, but we find that few of them deal with the particuar statutes that control this controversy, and none of the decisions referred to by counsel for the bank consider the statutory distinction between the rights of one to whom a document of title has been negotiated and the rights of one to whom such a document has been transferred. This distinction, under the Negotiable Instruments Act, is everywhere appréciated, and the Warehouse Receipts Act and the Federal Bills of Lading Act have plainly preserved such distinction.

There is no error in the decree of the Court of Appeals and the petition for *certiorari* is denied.

McKINNEY, CHAMBLISS, COOK and SWIGGART, JJ., concur.