DOUGHTY-STEVENS CO. *v.* GREENE COUNTY UNION BANK.

(*Knoxville*, September Term, 1937.)

Opinion filed Jan. 18, 1938.

324

MILLIGAN & HAYNES, of Greeneville, for complainant Doughty-Stevens Co.

SUSONG & PARVIN, of Greeneville, for Greene County Union Bank.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainants sued the bank, seeking to recover on a certificate of deposit reading as follows:

Certificate of Deposit

"Greene County Union Bank
"Greene County Bank 87—183
"Greeneville, Tenn., Apr. 25—1933. No. 12216
"Mrs. M. P. Myers has deposited $364.00
In this Bank Greene County Bank 364 Dol's 00
Cts. Dollars payable to the order of self On the return of this Certificate properly endorsed. 3 mo. months after date for value received with interest at the rate of 4 per cent. per annum.
"This Deposit is not subject to check.
"Subject to 30 days notice.
"J. P. Boles, Cashier
"By O. D. Cagle

326

"Endorsed on Back
"Mrs. M. P. Myers.
"By
"M. P. Myers.
"M. P. Myers.
"Admr.
"Mrs. M. P. Myers
"M. P. Myers."

The chancellor gave judgment against the bank, the Court of Appeals affirmed, and this court granted *certiorari* and argument has been heard.

As appears, the certificate was issued to Mrs. M. P. Myers, who died intestate on the 25th of February, 1934. Her estate was insolvent. On the following day, M. P. Myers, her husband, arranged with C. M. Mismer, a partner of the complainant firm of morticians, to furnish a casket and bury Mrs. Myers. He told Mismer that Mrs. Myers held a certificate of deposit in this bank, out of the proceeds of which he desired to pay the funeral expenses. He did not deliver the certificate to Mismer at that time, but a week or more later, on March 5, after the funeral, Mr. Myers took the certificate sued on to Mr. Mismer, who gave him a receipt for $331.75 and paid him $32.25 in cash; these items aggregating the amount, principal, and interest of the certificate. The certificate had never been indorsed by Mrs. Myers, and at this time Mr. Myers indorsed on the back thereof, in the presence of Mr. Mismer, "Mrs. M. P. Myers, by M. P. Myers." Mr. Mismer presented the certificate to the bank for payment, but the bank advised him that Mrs. Myers was indebted to the bank in a sum larger than the certificate, and refused payment. Later, another representative of the firm interviewed the bank and was

advised fully of this indebtedness of Mrs. Myers to the bank by a judgment and a note, and that the bank claimed an offset against this certificate.

Thus the matter stood until March 20th following, when Mr. Myers qualified as administrator of Mrs. Myers, and thereupon entered on the back of the certificate an indorsement reading, "M. P. Myers, Admr. Mrs. M. P. Myers, M. P. Myers." The bank still declined payment, and this suit was brought on May 2d following.

The Court of Appeals found that Mrs. Myers at her death was indebted to the bank by an unsatisfied judgment of $780.66, and also by a past-due note of $379, but held that the certificate was a negotiable instrument, and that it was negotiated to complainants for value before maturity, without notice of the counterclaims, or defenses, of the maker, and that the complainants were, therefore, holders in due course and entitled to recover thereon against the bank.

Assuming, but not deciding, that the indorsement of this certificate by M. P. Myers, as administrator of the payee, whose estate was insolvent, might be treated as an indorsement effective to place complainants in the position of holders free from equities between the original parties to the instrument, we can find no support for the view that the delivery of this certificate to the complainants by M. P. Myers, and the indorsement made at that time, and not until that time, by M. P. Myers of his deceased wife's name was effective to pass the paper to complainants in due course. Since it appears that before delivery and before this indorsement as administrator was made complainants had received full notice of the facts, their rights must be determined by the ef-

fectiveness of the delivery and indorsement as of March 5th.

It is insisted for the bank that (1) the certificate was past due when delivered, and (2) the attempted indorsement of the payee's name by M. P. Myers was on its face irregular, unauthorized, and ineffective.

That a certificate of deposit, such as we have before us, is negotiable and when transferred by proper indorsement for value before maturity passes to the transferee free from equities between the original parties is generally recognized, and our cases are in accord. See *Easley* v. *East Tennessee National Bank,* 138 Tenn., 369, 198 S. W. 66, L. R. A., 1918C, 689, and *Landis* v. *White Bros.,* 127 Tenn., 504, 152 S. W., 1031.

Conceding, but not deciding, that the somewhat involved language appearing on this certificate may be so construed as to justify the conclusion that it was not past due when indorsed and delivered, nevertheless, it is apparent that we have here an utter failure of timely, adequate, and effective indorsement. In *Landis* v. *White Bros., supra,* it was definitely held, in accordance with the general rule, that the transfer of a note, without indorsement, passes the title subject to defenses against the transferor, and this case was cited with approval and followed in our later case of *Hale & Co.* v. *Beley Cotton Co.,* 154 Tenn., 689, at page 699, 290 S. W., 994. The entire transaction between Mr. Myers and the complainants took place after the death of Mrs. Myers, the payee in this certificate. It was not represented, and cannot be contended, that the indorsement of her name by Mr. Myers was authorized by her. The complainants not only had no information or reason to believe that Mr. Myers had such authority, but knew at the time

that he did not. His attempted indorsement of her name was, therefore, in legal effect no indorsement at all.

■ "The purchaser of negotiable paper in due course is a favorite of the law, but he is nevertheless chargeable with notice of every fact shown upon the face or the back of the instrument." *Scott* v. *Wilkinson,* 215 Ala., 235, 110 So., 34, 36.

In a paragraph in 8 C. J., page 389, announcing the rule hereinbefore mentioned, that a transferee without indorsement, where the paper is payable to order, takes subject to defenses and equities between the original parties to the instrument, the case of *First National Bank of Shenandoah* v. *Kelgord,* 91 Neb., 178, 135 N. W., 548, is cited in a note for the holding that negotiable paper indorsed only by an individual did not constitute the transferee a holder in due course when it appeared that the paper was payable on its face to a company or corporation, although it appeared that the indorser in fact owned all of the stock of, or interest in, the payee.

■ Our Negotiable Instruments Law, Code, section 7354, provides that the instrument, if payable to order, "is negotiated by the indorsement of the holder completed by delivery." And section 7373 provides that: "For the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." It follows that no one can be the holder in due course of a note payable to a named payee or order without payee's indorsement.

■ We deem it unnecessary to extend the discussion. The undisputed fact that no authorized or effective indorsement was placed upon this paper prior to full and explicit notice by the maker to the transferee of the

counterclaims of the maker against the payee precludes recovery by the complainants; these counterclaims being conclusively established.

The Court of Appeals was further of the opinion that the chancellor properly denied the bank the right to set off against this certificate its valid claims against the payee, because the defendant bank did not file a cross-bill seeking such relief. To this we cannot agree.

The generally accepted view is that the relationship between the bank and the depositor is that of debtor and creditor. The certificate of deposit, although negotiable, is nothing more than an evidence of the indebtedness of the bank to the depositor. As said in *Wilson* v. *Witt*, 215 Ala., 685, 687, 112 So., 222, 224, 52 A. L. R., 1095, a deposit in bank "for all practical purposes represents money in hand, 'even though it be represented by short-time certificates, bearing interest.' *In re Johnston's Estate*, 190 Iowa, 679, 180 N. W., 740." It is manifest, therefore, that, as between the bank and the depositor, the bank may refuse to pay the depositor when the depositor is indebted to the bank by judgment or past-due note. If the depositor sue the bank for the deposit, certainly the bank need only show this state of facts to defeat recovery, and that the depositor has been issued and holds a certificate evidencing the deposit does not affect the situation, so long as the certificate is held by the depositor to whom it was issued. It is well settled that, "a defense, good against the transferor, is likewise good against a transferee without indorsement," *Landis* v. *White Bros.*, 127 Tenn., 504, 506, 152 S. W., 1031; and this applies equally to an irregular and unauthorized indorsement. The contention of the bank under such circumstances, so far as it merely resists re-

covery, is defensive only, and, until and unless the bank goes further and seeks to recover a judgment in its favor against the depositor, no cross-bill or other formal cross-action pleading is required.

Now this is exactly in accord with the holding in *Ford v. Harrison*, 150 Tenn., 369, 265 S. W., 89, 90, which is quoted from by both parties and also by the Court of Appeals. In concluding the opinion in that case it was said: "It has never been held necessary, in cases where suit is brought to recover upon a written instrument, for the defendant to file a cross-bill, or to file his answer in the nature of a cross-bill, in order to enable him to show, by way of defense, want or failure of consideration, payment in whole or in part, in cash, or by the transfer of property, or that on an accounting between the parties with respect to their mutual dealings the claim sued on is not owing by the defendant to the complainant."

In this Ford Case the suit in chancery was on a draft drawn by and paid to the defendant. In that case the answer sets up that the complainant (trustee for a bankrupt) was liable to the defendant for a sum in excess of that sued for, "but no recovery is sought and no affirmative relief prayed by the defendant. He, in effect, contents himself with a denial of liability for the sum sued for." The opinion thus proceeds:

"The determinative question is one of pleading; it being earnestly insisted that the defense is in the nature of a set-off and cannot be made without a cross-bill, or an answer in the nature of a cross-bill, praying for affirmative relief.

"The rule as laid down by MR. GIBSON, par. 730, is to the effect that, if affirmative relief is sought by the de-

332

fendant 'in the allowance of a set-off,' or otherwise, a cross-bill must be filed, and authorities are cited sustaining this general statement. However, the insistence made for the defendant below in this cause is that no 'affirmative relief' is sought; that, while the answer sets up facts on which, if established, the defendant would be entitled to recover a sum from the complainant, no such relief is prayed for, it being suggested that the insolvency of the party represented by the complainant as trustee rendered such a claim useless. In section 12 of paragraph 730, *supra,* MR. GIBSON says that, 'where the bill seeks a recovery on a deed, note, or other written instrument executed by the defendant, and the defendant seeks not only to defeat any recovery thereon, . . . but seeks also to have such deed, note, or other instrument delivered up and canceled,' etc., he must file a cross-bill. No such affirmative relief is sought in the instant case. Defendant seeks merely to defeat any recovery, and goes no further. He, in effect, denies liability for the money advanced to him, on the ground that he has made delivery to the complainant of the consideration contemplated and agreed upon, and that therefore he owes the complainant nothing. This insistence is not in conflict with the rule generally recognized, requiring a cross-bill whenever affirmative relief is sought. It is analogous to the defense of payment or failure of consideration. The cases of *American Nat. Bank* v. *Nashville Warehouse & Elevator Co.,* Tenn. Ch. App., 36 S. W., 960, and *Meek* v. *McCormick,* Tenn. Ch. App., 42 S. W., 458, were cases in which affirmative relief was sought; it being therein held that relief (affirmative) by way of equitable set-off cannot be had except by cross-bill.''

In neither of these cases was there a legal right of set-off presented as we have here. In *Meek* v. *McCormick* it was held that (headnote): "One cannot set off a debt due from a firm against a debt due to a member thereof, under Shannon's Code, section 4639 [section 8768 of 1932 Code] allowing set-offs where there are 'mutual demands.'" And, says the opinion, "The debts are not mutual, and the set-off cannot, therefore, be allowed. Shannon's Code, section 4639; *Flint* v. *Tilman*, 49 Tenn. (2 Heisk.), 202." And the court adds: "No case is made for an equitable set-off, and, besides, the relief by way of equitable set-off cannot be pleaded in an answer, and must be invoked by an original bill or cross bill"—citing *American Nat. Bank* v. *Warehouse & Elevator Co., supra.* There is no suggestion in this opinion that a set-off of legal mutual demands may not be made by answer. The only reference to the matter of pleading is to equitable set-off.

And so in *American Nat. Bank* v. *Warehouse & Elevator Co., supra,* the pertinent headnote reads: "Equitable set-off cannot be pleaded by way of answer, but the relief must be invoked by original bill or by cross bill." In that case the court held a corporation may not apply dividends due to an individual stockholder to the payment of a debt due the corporation from a partnership of which the stockholder is a member.

Here, again, the discussion of the question of pleading was confined to equitable set-off, illustrated by reference to cases; it being held that in this class of cases, where the demands are not mutual, and where the rights are complicated and frequently involve intervening claims, an original bill or cross-bill is required.

The broad language used by HUGHES, J., in *Kittrell v. Insurance Co.*, 1 Tenn. Civ. App., 253, at page 261, is not justified by the opinions in the two chancery appeals cases above discussed, which he relies on. The distinction between equitable and legal set-off was apparently overlooked.

The Code (section 8768) provides that a defendant may plead by way of set-off "mutual demands held by the defendant against the plaintiff at the time of action brought, and matured when offered in set-off."

This is a suit in chancery in a case actionable at law. The defendant clearly set forth the judgment and note hereinbefore referred to, and claimed the right of set-off with respect thereto. Full notice was thus given of this defense, and, while these counterclaims exceeded largely the certificate sued on, no judgment for this difference was sought. To exact under such conditions the filing of a cross-bill could serve no possible useful purpose. The decree of the Court of Appeals must be reversed, and the suit dismissed.