**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**BANK OF CELINA,**
**Defendant-Appellant.**

No. 82–5337.

United States Court of Appeals,
Sixth Circuit.

Argued July 26, 1983.

Decided Nov. 15, 1983.

Mark H. Westlake (argued), Ervin M. Entrekin, Tune, Entrekin & White, Nashville, Tenn., for defendant-appellant.

William H. Smith, Johanna M. Sabol, Michael F. Crotty, Washington, D.C., for amicus curiae American Bankers Ass'n.

Robert E. Rice, Carleton D. Powell (argued), Tax Div., U.S. Dept. of Justice, Washington, D.C., Joe B. Brown, U.S. Atty., Robert J. Washko, Asst. U.S. Atty., Nashville, Tenn., Glenn L. Archer, Jr., Asst. Atty. Gen., Dept. of Justice, Tax Div., Washington, D.C., for plaintiff-appellee.

Before ENGEL, MARTIN and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

The Bank of Celina, the defendant, appeals from a district court judgment in favor of the United States in this action originally brought to foreclose on tax liens and to enforce a levy. The liens and levy had resulted from the failure of RBS Sportswear, Inc. (RBS), the taxpayer, to pay federal employment taxes. The district court held the Bank of Celina liable for not surrendering RBS property to which the government was entitled because of its tax liens.[1] We affirm.

I.

RBS, a Tennessee corporation performing "cut and sew" work for various clothing manufacturers, began having difficulty meeting its federal employment tax obligations late in 1975. The Internal Revenue Service made assessments against the company for unpaid taxes on March 8, 1976 in the amount of $42,745.82, on March 28, 1977 in the amount of $33,623.84 and on May 16, 1977 in the amount of $9,126.33. The government properly filed notices of tax liens arising from these assessments on March 17, 1976, on April 27, 1977 and on June 10, 1977 respectively.[2]

In February, 1977, approximately 11 months after the first tax lien had been filed, the bank and RBS agreed that the bank would periodically loan money to RBS so that the latter could meet its payroll. Each advance was to be secured by a security interest in an account receivable arising from a particular invoice or order. Most notes would be payable in 21 days. A financing statement was filed on March 7, 1977 in accordance with Tennessee law.

Between February 8, 1977 and July 1, 1977, RBS executed twenty separate notes totaling over $324,000. The bank obtained payment by three methods. Most frequently, the president of RBS would receive checks for accounts receivable and would endorse them to the bank. The amounts were then applied to the outstanding loans. Second, the bank received wire transfers directly from debtors of RBS and applied such amounts to the loans. Third, the bank "set-off" outstanding loan balances against the bank accounts of RBS.

Kerry Eads, the bank's Cashier, learned on July 13, 1977 that federal agents had padlocked the taxpayer's premises. Fearing a levy upon the monies which RBS had deposited with the bank, Eads directed on July 14 at 8:00 a.m. that the taxpayer's due and payable loans be set-off against the latter's bank accounts.[3] The set-offs totalled $10,010.97. The bank then received

---

1. The district court declined to impose personal liability on Kerry Eads, the bank's Cashier. The government does not appeal this decision.

2. A fourth assessment in the amount of $809.03 occurred on July 25, 1977. The accompanying notice of tax lien was properly filed on August 5, 1977. This assessment and lien are not involved on this appeal.

3. As of July 14, 1977, RBS was obligated on four promissory notes. Since the maturity date on two notes had passed and since the other notes contained provisions permitting acceleration if the taxpayer were in default on any other obligation, all four notes were due and payable at the time of the set-off. The total amount due was $59,165.38.

$9,445.48 in wire transfers which also were applied to the loan balances. Two and one-half hours later, the government served a notice of levy. Subsequent to this levy, the bank received payments from RBS or wire transfers from RBS customers in excess of $34,000.

The government contended before the district court that because its lien was prior to any interest held by the bank and that because the lien had attached to all RBS property in the bank's possession (*i.e.,* the bank accounts and the proceeds of accounts receivable which were paid to the bank), the bank could not defeat the lien foreclosure action by setting off RBS assets which were subject to the lien. That the set-off of bank accounts and wire transfers occurred before the government served the notice of levy and that the set-off of post-levy payments occurred before the government filed its foreclosure action was said to be irrelevant. The bank admitted that it once held RBS property to which the lien had attached. It asserted, however, that exercising its right of set-off before the notice of levy and again before the filing of the lien foreclosure action eliminated the taxpayer's property interests in the pre-levy bank accounts and wire transfers and in the post-levy payments. As a result, the bank allegedly did not hold any of the taxpayer's property at either time that the government sought to enforce its lien. This fact was said to render the government's enforcement actions futile. In the alternative, the bank contended that the government's lien was invalid against it under 26 U.S.C. § 6323(b)(1)(A). The district court ruled for the government and granted judgment in the amount of $56,316.98.

■ Before proceeding to the merits, an overview of the relevant federal statutes is in order. The federal tax lien arises when unpaid taxes are assessed and continues until the resulting liability is either satisfied or becomes unenforceable through lapse of time. 26 U.S.C. § 6322. Congress provided for the tax lien in 26 U.S.C. § 6321:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any . . . additional amount, [or] addition to tax . . .) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

One effect of a tax lien is that a third party possessing property or rights to property belonging to a taxpayer holds such property subject to the lien, unless the third party has a prior lien or comes within one of the exceptions listed in 26 U.S.C. § 6323. Where several notices of tax lien have been filed as unpaid taxes accumulate, the priority of each lien relates back to the date of the first notice. 26 U.S.C. § 6321; *Peterson v. United States,* 511 F.Supp. 250, 256–57 (D.Utah 1981). In the present case, therefore, the priority of the government's lien for all taxes owed by RBS relates back to March, 1976.

■ The government possesses multiple options for actually collecting unpaid taxes. One method is to levy "upon all property and rights to property . . . belonging to [the taxpayer] or on which there is a lien. . . ." 26 U.S.C. § 6331(a). The levy extends only to the taxpayer's property that is possessed at the time of service. 26 U.S.C. § 6331(b). The person holding such property must surrender it to the government upon demand, subject to an exception not relevant here. 26 U.S.C. § 6332.

A second method available to the government is to bring a lien foreclosure suit pursuant to 26 U.S.C. § 7403. Although a tax lien must exist in order to initiate such an action, the government need not have levied. *Id.* If property to which a tax lien has attached is held by a third party who also possesses a lien, the issue then becomes one of lien priority. Federal law controls priority disputes. *See, e.g., Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Acri,* 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955). Although the government levied in this case, it relies solely upon its lien to support its claim of entitlement to the

monies which the bank applied to the RBS loan balances.

## II.

██ Whether the bank possessed property or rights to property of RBS to which the tax lien *originally* could attach is a question of state law. The federal statutes under consideration create no property interests; they merely attach federally defined consequences to state created rights. *Aquilino,* 363 U.S. at 512–13, 80 S.Ct. at 1279–80; *United States v. Durham Lumber Co.,* 363 U.S. 522, 524, 80 S.Ct. 1282, 1283, 4 L.Ed.2d 1371 (1960); *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). The bank correctly acknowledges that it once possessed RBS property to which the tax lien had attached. First of all, RBS deposited money in accounts at the bank. Tennessee law provides that a depositor becomes a creditor of the bank. *Doughty-Stevens Co. v. Greene County Union Bank,* 172 Tenn. 323, 330, 112 S.W.2d 13 (1938); *Conquest v. Broadway National Bank,* 134 Tenn. 17, 21, 183 S.W. 160 (1915). Although the funds in an account belong to the bank, the depositor, under certain circumstances, retains a right to withdraw the money. Accordingly, the bank was in possession of funds in which RBS had retained a state law property interest. The federal tax lien attached to this interest.

██ Secondly, RBS possessed accounts receivable which evidenced its entitlement to payment from customers. These receivables clearly were property or rights to property belonging to the company. Since the receivables in question arose not earlier than eleven months after the government filed notice of its lien, the receivables were encumbered with the lien from their inception. 26 U.S.C. § 6321. The receivables in turn were transformed either into wire transfers from customers to the bank or checks from customers to RBS which were endorsed over to the bank. In either situation, the proceeds were impressed with the lien when the bank initially received them.

As stated in *Bess,* 357 U.S. at 57, 78 S.Ct. at 1058:

> The transfer of property subsequent to the attachment of the lien does not affect the lien, for "it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere . . . ."

The bank contends, however, that at both times that the government actually sought to enforce its lien, the bank possessed none of the taxpayer's property. Specifically, the bank asserts that it extinguished any RBS property interests in the bank accounts and wire transfers which existed before the levy by setting off the accounts and applying the wire transfers to the loan balances. Any RBS property interests in the bank accounts, wire transfers and customer checks existing after the levy but before the filing of the lien foreclosure action were similarly destroyed. The government counters that once a federal tax lien attaches to a taxpayer's property which is held by a third party, the lien remains attached to the property until the government receives payment. This allegedly is so regardless of whether or not the taxpayer's interest in the property is extinguished.

The effect of extinguishing a taxpayer's property interest, which interest has been subjected to a federal tax lien, is a question of first impression in this circuit. The federal cases most akin to the present situation are distinguishable. In most of these cases, the government levied to enforce its lien *before* the third party possessing property belonging to a taxpayer attempted to extinguish the taxpayer's property interest by setting off that interest against a debt. The government prevailed on the theory that its levies were prior to the set-offs without having to argue that its liens mandated a favorable result in any event. *See J.A. Wynne Co., Inc. v. R.D. Phillips Construction Co., Inc.,* 641 F.2d 205 (5th Cir. 1981); *United States v. Citizens and Southern National Bank,* 538 F.2d 1101 (5th Cir. 1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977); *United States v. Sterling National Bank & Trust Co.,* 494

F.2d 919 (2d Cir.1974); *Bank of America National Trust and Savings Assoc. v. United States,* 345 F.2d 624 (9th Cir.1965); *Bank of Nevada v. United States,* 251 F.2d 820 (9th Cir.), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 873 (1958); *United States v. First National Bank of Arizona,* 348 F.Supp. 388 (D.Ariz.1970), *aff'd,* 458 F.2d 513 (9th Cir.1972). Since the government's notice of the levy and filing of the foreclosure action in the present case each occurred *after* the bank had set-off RBS property, the cited cases do not aid the government's position.

In another reported case, the bank prevailed because it set-off property belonging to the taxpayer under Pennsylvania's automatic set-off rule before the government's levy. *Pittsburgh National Bank v. United States,* 657 F.2d 36 (3d Cir.1981). Unlike the present situation, however, the government's lien in *Pittsburgh National* clearly was junior to the bank's interest in the taxpayer's property. The bank in that case loaned money to the taxpayer and obtained set-off rights before the government filed its notice of tax lien. Consequently, the government had no opportunity to argue the lien theory advanced here.

Furthermore, conflicting implications emanate from the decisions of the various courts of appeals concerning the question at hand. Opinions from the second and fifth circuits imply that a bank may successfully set-off a taxpayer's deposited funds against outstanding debts at any time before the government acts to enforce its lien. *See Citizens and Southern National Bank, supra; Sterling National Bank, supra.* Such implications must be regarded as *dicta;* as has been indicated, the banks in those two cases did not in fact set-off before the government served notice of levy. In contrast with these cases, *dicta* in a ninth circuit decision indicates that once a lien attaches to a taxpayer's property, a bank may

not set-off even if it attempts to do so before the government acts to enforce its lien. *Bank of Nevada,* 251 F.2d at 825. In summary, we conclude that none of the reported cases is directly on point and proceed to evaluate the arguments of the parties.[4]

The bank's theory is that the taxpayer's property interests in the bank accounts, endorsed checks and wire transfers were extinguished under state law before the government sought to enforce its lien. Thus, although the lien continued to be valid, there no longer was property belonging to the taxpayer to which the lien could remain attached. Although we agree that the taxpayer's property interests were extinguished before the government levied or filed the lien foreclosure action, we do not agree that this extinguishment caused the lien to become disattached from the assets as they passed from RBS to the bank.

We first consider the destruction of the taxpayer's property interest in the deposit accounts which were set-off before the notice of levy and before the filing of the lien foreclosure action. Of central importance to this discussion is the fact that RBS was delinquent on its loan repayments when the set-offs occurred. Under Tennessee law, a bank may set off a depositor's accounts against overdue loans without the depositor's consent. This set-off extinguishes whatever right the depositor may have had to withdraw, or sue for, the money:

> It is manifest, therefore, that, as between the bank and the depositor, *the bank may refuse to pay the depositor when the depositor is indebted to the bank by* judgment or *past-due note. If the depositor sue the bank for the deposit, certainly the bank need only show this state of facts to defeat recovery,* and that the depositor has been issued and holds a certificate

---

4. An amicus curiae, American Banker's Association, cites several cases involving federal tax liens on unmatured insurance policies. The principal case, *United States v. Sullivan,* 333 F.2d 100 (3d Cir.1964), relied upon policy considerations which are relevant in the insurance context but which are not relevant here. *See* *id.* at 114–20. In fact, the Sullivan court expressly indicated that its holding was limited to cases involving insurance policies. *Id.* at 120, n. 39. We therefore find the insurance cases cited by the amicus curiae to be distinguishable.

evidencing the deposit does not affect the situation. . . .

*Doughty-Stevens,* 172 Tenn. at 330, 112 S.W.2d 13. Since Tennessee law provides that money becomes a bank's property when deposited, and since state law further provides that a depositor's remaining interest, *i.e.,* the right of withdrawal, can be eliminated by set-off, the deposit accounts set-off by the bank were not the taxpayer's property when the government sought to enforce its lien.

The same result obtains concerning the endorsed checks and wire transfers. The bank argues, and the government does not dispute, that once the bank applied the checks and wire transfers to RBS' outstanding loan balances, the company had no right to recall, or sue for, those funds. The funds therefore became the property of the bank.

 That the funds at issue became the bank's property under state law does not, however, answer the question of whether the tax lien followed the property into the bank's hands. We hold that once a federal tax lien has attached to a taxpayer's property, that property remains subject to the lien when transferred from the taxpayer to a third party. *Bess,* 357 U.S. at 57, 78 S.Ct. at 1058. Although state law controls the issue of whether property exists to which a tax lien may attach in the first instance, federal law as explicated in *Bess* governs the question of how far an attached tax lien follows encumbered property. The district court correctly held that the government's lien entitled it to the monies represented by the deposit accounts, endorsed checks and wire transfers.

### III.

 In the alternative, the bank argues that the government's lien is invalid against it under 26 U.S.C. § 6323(b)(1)(A):

(b) Protection for certain interests even though notice filed.—*Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—*

(1) Securities.—With respect to a security (as defined in subsection (h)(4))—

(A) *as against a purchaser of such security* who at the time of purchase did not have actual notice or knowledge of the existence of such lien . . . . [Emphasis supplied.]

Thus, the bank's theory is that it was a "purchaser" of a "security" without actual notice of the government's filed tax lien. We agree with the district court, however, that the bank was not a purchaser of a security within the meaning of the statute.

Congress defined "purchaser" in 26 U.S.C. § 6323(h)(6):

The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, *acquires an interest (other than a lien or security interest) in property* which is valid under local law against subsequent purchasers without actual notice. [Emphasis supplied.]

Although the bank gave full consideration through its loans to RBS, the only interest in property which it obtained was a security interest in the accounts receivable of RBS. Since the language of the quoted definition excludes security interests, the bank was not a "purchaser" under § 6323(h)(6). *See United States v. L.R. Foy Construction Co.,* 300 F.2d 207, 210 (10th Cir.1962).

 Nor did the bank obtain an interest in a "security." For purposes of § 6323(b)(1)(A), a security is:

any bond, debenture, note, or certificate or other evidence of indebtedness, issued by a corporation or a government or political subdivision thereof, with interest coupons or in registered form, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing; negotiable instrument; or money.

26 U.S.C. § 6323(h)(4). As noted by the district court, accounts receivable are not covered by the plain language of this definition. Since the bank in the present case was not a "purchaser" of a "security" with-

in the meaning of § 6323, we need not decide whether it had actual notice or knowledge of the government's filed lien.

### IV.

The judgment of the district court is AF-FIRMED.