UNITED STATES of America

v.

**THIRD NATIONAL BANK OF NASHVILLE, TENNESSEE.**

No. 3–83–0763.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 30, 1984.

Robert E. Rice, Dept. of Justice, Tax
Div., Civ. Trial Div., Southern Region,

Washington, D.C., Joe Brown, U.S. Atty., Nashville, Tenn., for plaintiff.

James L. Roberts, Atty. at Law, Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, Chief Judge.

The United States brings this action against Third National Bank (hereinafter Bank) for the latter's failure to honor a tax levy upon a delinquent taxpayer's savings account. 26 U.S.C. § 6332. The Government seeks to recover $1,683.52 plus costs and interest and a penalty of $841.76. *Id.* Neither party challenges this court's jurisdiction over this matter. 26 U.S.C. § 7402; 28 U.S.C. §§ 1340, 1345.

The facts of this case are not in dispute. On September 6, 1979, M.A. "Mike" Warnke opened savings account number 004–21144–08 with the Bank. The contract governing that account provided in part that "[t]he Bank may pay depositors at its discretion on demand without notice, but the right is reserved to require sixty days' written and acknowledged notice of intention to withdraw funds on deposit." The Bank does not deny that Warnke in fact made deposits to and withdrawals from this account. On October 25, 1982, there was a balance of $1,683.52 on deposit in Warnke's account.

It was on October 25, 1982, that the Bank was served with a notice of levy upon all property and rights to property belonging to Michael A. and Rose Warnke in its possession. *See* 26 U.S.C. § 6331. This levy was made in an effort to recover unpaid federal income taxes assessed against the Warnkes on April 19, 1982, and August 2, 1982, for the tax years 1980 and 1981, respectively. The levy sought to collect up to $99,155.28 in taxes.

The Bank refused to honor the levy. It notified the Internal Revenue Service that it was setting off the balance in the savings account against an indebtedness owed by Mike Warnke to it. This indebtedness was evidenced by a 91-day promissory note dated August 2, 1982, in the amount of $9,000. The terms of that note provided that "[a]ny indebtedness due from the legal holder hereof to the undersigned may be appropriated and applied hereon at any time, as well before as after the maturity hereof." For the purpose of this opinion, the court accepts the Bank's assertions that the August 2, 1982, note was the last in a series of renewal notes evidencing an obligation originally incurred on October 4, 1979, *see First National Bank v. Yowell*, 155 Tenn. 430, 294 S.W. 1101 (1927); *First National Bank of Sparta v. Hunter*, 22 Tenn.App. 626, 125 S.W.2d 183 (1938), and that each note in the series contained the setoff provision quoted above. There is no dispute that the setoff occurred after, and indeed was triggered by, the notice of levy. The Bank does not allege that the note was in default, *see Doughty-Stevens Co. v. Greene County Union Bank*, 172 Tenn. 323, 112 S.W.2d 13, 15 (1938), the debt mature, *see Id.*, nor Warnke insolvent. *See Conquest v. Broadway National Bank*, 134 Tenn. 17, 183 S.W. 160, 161 (1916).[1] The Internal Revenue Service issued its notice of final demand January 10, 1983. When the Bank persisted in its refusal to surrender the $1,683.52 that had been in Warnke's savings account, the Government commenced this action.

■ There is no question that a lien in favor of the United States arose on April 19, 1982, when the Warnkes failed to pay the taxes assessed against them.[2] 26 U.S.C. § 6321. That lien immediately at-

---

**1.** Arguably, neither *Doughty-Stevens Co., supra,* nor *Conquest, supra,* is authority for a bank's common law right of setoff, because both cases apply a state statutory right of setoff created by the bankruptcy code. However, the principles articulated in those cases regarding the statutory right of setoff are in accord with the common law. *Compare Doughty-Stevens Co., supra,* and

*Conquest, supra, with* 1 Schlichting, Rice & Cooper, *Banking Law* §§ 11.02–11.04 (1983).

**2.** The April 19, 1982 assessment was for $23,-525.34 exclusive of interest and penalties. Since this amount was far in excess of the value of any of the Warnkes' property held by the Bank, the court need not concern itself with the August 2, 1982, assessment.

tached to all property and rights to property owned by the Warnkes on that date. *Id.* The Bank can raise only two defenses against the Government's efforts to enforce its lien: either it was not in possession of property of the taxpayer which was subject to levy or the taxpayer's property it was in possession of was subject to a prior judicial attachment or execution. 26 U.S.C. § 6332(a); *accord, United States v. Weintraub,* 613 F.2d 612, 616, 622–23 (6th Cir. 1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980); *United States v. Citizens and Southern National Bank,* 538 F.2d 1101 (5th Cir.1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977); *Bank of Nevada v. United States,* 251 F.2d 820, 824 (9th Cir.1957), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958); *United States v. Manufacturer's Trust Co.,* 198 F.2d 366, 369 (2d Cir. 1952). A claim of lien priority is not a defense to a federal tax levy. *Id.* The Bank does not allege that Warnke's savings account was subject to a prior judicial lien.

The court must look to state law to determine whether the Bank held any of Warnke's property or rights to property on October 25, 1982. *E.g., Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). The Tennessee cases unanimously hold that the relationship between a bank and a general depositor is that of a debtor to its creditor. *Doughty-Stevens Co., supra,* 112 S.W.2d at 15; *Conquest, supra,* 183 S.W. at 161; *Wagner v. Citizens' Bank & Trust Co.,* 122 Tenn. 164, 122 S.W. 245, 247 (1909). Thus, the bank owns all those funds deposited with it, and the depositor retains a chose in action to recover those funds. A chose in action is property in Tennessee. *Wills v. Franklin,* 131 F.Supp. 668, 672 (E.D.Tenn. 1953), *aff'd,* 217 F.2d 899 (6th Cir.1954); *See United States v. Bank of Celina,* 721 F.2d 163, 167 (6th Cir.1983); *Citizens and Southern National Bank, supra,* at 1105 (Georgia law).

Having determined that Warnke retained a property right to recover his money from the Bank when he opened his savings account with it, the only remaining issue the court must decide is whether Warnke alienated that property right before the Government levied on his savings account. The Bank argues that since it could have exercised its contractual right of setoff prior to the maturity of Warnke's debt, he really had no property right in his account on October 25, 1982. In essence, the Bank's position is that a person does not own that against which there is an outstanding lien. It cites as authority for this remarkable proposition *In Re Pine,* 717 F.2d 281 (6th Cir.1983). The Bank has terribly misread *In Re Pine, supra.* The bankruptcy statute which the court construed in that case provided that a debtor could only exempt his equity interest in property from the claims of his creditors. *See* Tenn.Code Ann. § 26–2–102 (1980). The court did not hold that one does not legally own property subject to a lien. Indeed, as Judge Lively and other astute scholars have observed, it is logically impossible to hold a lien against that which one owns. *Citizens and Southern National Bank, supra,* at 1106; 1 Schlichting, Rice & Cooper, *Banking Law* § 11.02 (1983). Conversely, if property is subject to a lien, it must be owned by someone other than the lien holder.

Turning more particularly to the problem before the court here, it is perfectly clear that Warnke held a property right to the funds he had deposited with the Bank until the Bank exercised either its common law or contractual right of setoff. Common law setoff in Tennessee requires discrete action by the debtor before the creditor's property right is extinguished. The same is true of the Bank's contractual right of setoff: the note provides that the Bank "may," not that it "shall," appropriate and apply funds on deposit with it.

Until a bank has notified its depositer and then *exercised* its right of setoff, the depositor is free to withdraw from his account, and it is inconceivable that Congress, by virtue of 26 U.S.C. § 6323, intended to prohibit the Government from levying on that which is plainly

accessible to the delinquent taxpayer-depositor.

*United States v. First National Bank of Arizona,* 348 F.Supp. 388, 389 (D.Ariz. 1970), *aff'd,* 458 F.2d 513 (9th Cir.1972) (per curiam) (emphasis in the original); *accord, Citizens and Southern National Bank, supra,* at 1106; *United States v. Sterling National Bank and Trust Company of New York,* 494 F.2d 919, 922 (2d Cir.1974); *United States v. Trans-World Bank,* 382 F.Supp. 1100, 1104 (C.D.Cal.1974). The tax lien having attached, the subsequently exercised setoff could not extinguish it. *See Bank of Celina, supra,* at 169.

 Since Warnke had access to his account on October 25, 1982, the Bank's failure to honor the Government's levy was wrongful. Moreover, a review of the facts and law convinces the court that its refusal was completely unreasonable. The Bank made its initial decision to set off the funds in Warnke's account without consulting legal counsel, and then remained obdurately steadfast in its course of action despite overwhelming legal precedent against it. Consequently a fifty percent penalty as well as the principal sum in controversy plus costs and interests shall be awarded against the Bank.[3]

An appropriate order shall be entered.

---

**3.** Although the court is aware such a pronouncement is *obiter dicta,* were the question before it, it would find that the Government's lien had priority over any interest the Bank had in Warnke's account.

While the question of whether a taxpayer has property is a question of state law, the issue of priority of tax liens is governed by federal law. *Aquilino, supra.* It is this court's opinion that 26 U.S.C. § 6323(b)(10) clearly provides that the only way a security interest in a bank account can take priority over a federal tax lien is for the secured party to cut off the depositor's access to the funds completely. The account need not be represented by a tangible instrument to block the depositor's access to it. As the regulations provide,

the term "passbook" includes ... [a]ny procedure or system, such as an automatic data processing system, the use of which by the bank or other savings institution will prevent a withdrawal from the account to the extent of the loan balance.

Treas.Reg. § 301.6323(b)–1(j)(2)(ii) (1976).

The same conclusion is reached if one analyzes the Bank's right as a security interest. *See* 26 U.S.C. § 6323(a). Assuming that the Bank's contractual right of setoff is an interest in property acquired by contract to secure the payment of an obligation, it had not, as of October 25, 1982, become protected under local law against a subsequent judgment lien arising out of an unsecured obligation. *See* 26 U.S.C. § 6323(h)(1). One may perfect a security interest in a chose in action either by assignment or pledge. *See Duncan Box & Lumber Co. v. Applied Energies,* 270 S.E.2d 140 (W.Va.App.1980); *Walton v. Piqua State Bank,* 204 Kan. 741, 466 P.2d 316 (1970). The Uniform Commercial Code does not apply to bank deposits. Tenn. Code Ann. § 47–9–104(k) (1979). Both assignment and pledge require the owner of the property affected to surrender all control over it to the secured party. *See Woodward v. Crump,* 95 Tenn. 369, 371, 32 S.W. 195 (1895); *Robertson v. Wade,* 17 Tenn.App. 457, 68 S.W.2d 487, 493 (1933). Joint possession by the obligor and obligee, which is the most the Bank can argue in this case, is insufficient to create a security interest superior to subsequently attaching creditors. *See Smith v. Atkinson,* 51 Tenn. 625, 628, 4 Heisk. 491, 493 (1871).

Although dicta, hopefully this discussion of lien priority will forestall any further litigation between the parties to this action.